612 S.E.2d 707

**Majid NASSER–MOGHADDASSI, Respondent,**

**v.**

**Farideh Gerami MOGHADDASSI, Appellant.**

**No. 3932.**

Court of Appeals of South Carolina.

Heard Jan. 11, 2005.

Decided Jan. 31, 2005.

Rehearing Denied May 19, 2005.

184

186

Jeffrey Falkner Wilkes, of Greenville, for Appellant.

Kimberly Fisher Dunham, of Greenville, for Respondent.

ANDERSON, J.

In this domestic relations action, Mrs. Farideh Gerami Moghaddassi (Mother) appeals the family court order awarding custody of the couple's children to Mr. Majid Nasser–Moghaddassi (Father). Additionally, Mother appeals the distribution of the marital estate and the award of the marital residence to Father. We affirm.

## *FACTUAL/PROCEDURAL BACKGROUND*

The Moghaddassis, who were married in February of 1983, have three minor children: a daughter who was sixteen at the time of the final hearing, a son who was thirteen, and another

daughter who was seven. Mother and Father are both natives of Iran and were both educated in England. They have been in the United States since 1986, when Father, an engineer, found employment here.

According to Father's trial testimony, the parties argued frequently. When their oldest daughter was nearing her teenage years, Father and Mother's arguments progressed into physical altercations. Father recounted one instance where Mother became upset because their daughter and her friends were in a room without adult supervision, while Father and Mother were in another part of the house:

> My wife .... she started pushing me around that, You're not doing anything as a father. She's up to no good in there and there's a boy in the room.
>
> I said, Hey, they are all teenagers, they are friends. But she pushed me around, pushed me around and got physical with me and she hit me with a—a children's recorder on the floor she picked up and she hit me in the wrist. And it was very painful. I went down on my knees and she hit me in the head....

As a result of the incident, Mother was charged with criminal domestic violence and spent several days in jail. Father related another episode: "we had a little argument and that was—when that was over, I was sitting and working with the computer and suddenly she approached me from the back and poured hot coffee on my head." He further averred that when angry, Mother would scratch his face, and that she has broken his eyeglasses on five occasions. Frequently, the children were present during these encounters.

The relationships between the children and their mother are strained. Father stated that his wife would call their sixteen-year-old daughter "bitch, prostitute, ... whore" in front of her friends. Additionally, Father testified to seeing his wife abusing their daughter, "[p]hysically pulling her hair, pushing her around." During the year preceding trial the oldest daughter refused to see her mother. According to Father, Mother mistreated the younger children as well, including "slapping around, pushing" their son.

A Guardian ad Litem (GAL or guardian) was appointed to represent the interests of the three minor children. She

prepared a report which discusses her interviews with, among other persons, the parties' children. The report describes the children's accounts of Mother's behavior:

The oldest child . . . . relayed to me that her parents have had lots of fights. Her mother always insults her father. She also related that her mother always instigates and starts the fights with her father. . . . She describes her mother as yelling and cursing. . . . She also related to me that her mother has continually called her a whore, has hit her and her father on many occasions.

. . . She does not want to see her mother at all.

. . . [T]he thirteen year old son . . . . relayed to me that his mother always starts the fights. That he has had to call the Police two times. He related how recently his mother hit his father with the broom and was clawing at him. . . . He described his mother to me as "mom is abusive". He described an incident where the mother hit him with a metal pole and pushed him onto some stairs. . . .

I then spoke with . . . the six year old. . . . She said her mother fus[s]ed a lot at her dad and broke his glasses and hit him a lot with the broom, a flashlight and rock. . . . She told me that she was scared of her mother, she hits everybody in the family. . . .

Father initiated divorce proceedings. The family court: (1) granted a divorce on one year's separation; (2) awarded custody of the three minor children to Father; (3) ordered Father to pay $1,300 per month in permanent, periodic alimony; (4) apportioned the marital estate 60% to Father, 40% to Mother; and (5) distributed the marital residence to Father as part of his share of the marital estate. The issues before this Court relate to custody of the children and division of the marital assets.

### STANDARD OF REVIEW

In appeals from the family court, this Court may find facts in accordance with its own view of the preponderance of the evidence. *Emery v. Smith,* 361 S.C. 207, 603 S.E.2d 598 (Ct.App.2004) (citing *Rutherford v. Rutherford,* 307 S.C. 199, 414 S.E.2d 157 (1992)). However, this broad scope of review does not require us to disregard the family court's

findings. *Bowers v. Bowers,* 349 S.C. 85, 561 S.E.2d 610 (Ct.App.2002); *Badeaux v. Davis,* 337 S.C. 195, 522 S.E.2d 835 (Ct.App.1999). Nor must we ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 280 S.E.2d 541 (1981); *Murdock v. Murdock,* 338 S.C. 322, 526 S.E.2d 241 (Ct.App.1999); *see also Dorchester County Dep't of Soc. Servs. v. Miller,* 324 S.C. 445, 477 S.E.2d 476 (Ct.App.1996) (ruling that because the appellate court lacks the opportunity for direct observation of witnesses, it should accord great deference to the family court's findings where matters of credibility are involved). An appellate court "should be reluctant to substitute its own evaluation of the evidence on child custody for that of the trial court." *Woodall v. Woodall,* 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996). Our broad scope of review does not relieve appellant of her burden to convince this Court the family court committed error. *Skinner v. King,* 272 S.C. 520, 522–23, 252 S.E.2d 891, 892 (1979).

## *ISSUES*

I. Was the Guardian ad Litem's recommendation the product of an independent, balanced, and impartial investigation, well documented and supported by the facts?

II. Did the family court err in ordering Mother to pay a portion of the Guardian ad Litem fees?

III. Was the distribution of the marital estate fair and equitable in light of the facts of this case?

IV. Did the family court err in awarding Father title to the marital residence?

V. Does the evidence support the family court's denial of an award of personal property to Mother?

VI. Did the family court err by not awarding Mother attorney's fees and costs?

## LAW/ANALYSIS

Mother asserts six exceptions to the family court order. We disagree with Mother's contentions and affirm the family court's decision.

### I. The GAL's Recommendation

 Mother first argues the GAL's recommendation was not the product of an independent, balanced, and impartial investigation. We disagree.

 The paramount and controlling factor in every custody dispute is the best interests of the children. *Shirley v. Shirley*, 342 S.C. 324, 330, 536 S.E.2d 427, 430 (Ct.App.2000); *Paparella v. Paparella*, 340 S.C. 186, 189, 531 S.E.2d 297, 299 (Ct.App.2000). In *Shirley*, we articulated the South Carolina rule governing custody cases:

> In all custody controversies, the controlling considerations are the child's welfare and best interests. In reaching a determination as to custody, the family court should consider how the custody decision will impact all areas of the child's life, including physical, psychological, spiritual, educational, familial, emotional, and recreational aspects. Additionally, the court must assess each party's character, fitness, and attitude as they impact the child.

342 S.C. at 330, 536 S.E.2d at 430 (citations omitted). When determining the best interests of a child,

> the family court should consider several factors, including: who has been the primary caretaker; the conduct, attributes, and fitness of the parents; *the opinions of third parties (including the guardian,* expert witnesses, and the children); and the age, health, and sex of the children. Rather than merely adopting the recommendation of the guardian, the court, by its own review of all the evidence, should consider the character, fitness, attitude, and inclinations on the part of each parent as they impact the child as well as all psychological, physical, environmental, spiritual, educational, medical, family, emotional and recreational aspects of the child's life.

*Pirayesh v. Pirayesh*, 359 S.C. 284, 296, 596 S.E.2d 505, 512 (Ct.App.2004) (emphasis added) (citations omitted).

In the landmark opinion, *Patel v. Patel,* 347 S.C. 281, 555 S.E.2d 386 (2001), our supreme court reviewed the historical development of the role of the GAL in South Carolina:

A guardian *ad litem,* as the later phrase suggests, is a guardian for litigation. Traditionally, GALs were lawyers appointed by the court to appear in a lawsuit on behalf of a minor or incompetent. Over time, the role of the guardian was defined by statute as well as by common law. Lay persons as well as lawyers were appointed by the court in cases to protect those the court or legislature deemed could not protect themselves. . . .

The GAL functions as a representative of the court, appointed to assist the court in making its determination of custody by advocating for the best interest of the children and providing the court with an objective view. *Fleming v. Asbill,* 326 S.C. 49, 483 S.E.2d 751 (1997); *Townsend v. Townsend,* 323 S.C. 309, 474 S.E.2d 424 (1996). Standard setting for GALs in this "new" role has been very ad hoc. The legislature has set standards for a GAL appointed in abuse and neglect cases. However, there has been no comprehensive or coherent approach for the setting of standards for the use of GALs in private custody disputes. . . .

*Patel* at 287–88, 555 S.E.2d at 389 (footnote omitted). Due to the new role guardians play, and "[w]hile a more complete approach [was] being examined by the three branches of government," the *Patel* court "set forth some base line standards":

In connection with developing a recommendation to the family court, a GAL shall: (1) conduct an **independent, balanced, and impartial** investigation to determine the facts relevant to the situation of the child and the family, which should include: reviewing relevant documents; meeting with and observing the child in the home setting and considering the child's wishes, if appropriate; and interviewing parents, caregivers, and others with knowledge relevant to the case; (2) advocate for the child's best interest by making specific and clear recommendations, when necessary, for evaluation, services, and treatment for the child and the child's family; (3) attend all court hearings and provide accurate, current information directly to the court;

(4) maintain a complete file with notes rather than relying upon court files; and (5) present to the court and all other parties clear and comprehensive written reports, including but not limited to a final report regarding the child's best interest, which includes conclusions and recommendations and the facts upon which the reports are based. . . .

*Id.* at 288–89, 555 S.E.2d at 390.

The facts that spawned the *Patel* prophylactic involved the conduct of a GAL who the court found had failed to conduct "an objective, balanced investigation." *Id.* at 286, 555 S.E.2d at 388. The guardian "did not keep notes of her observations during her investigation and failed to produce a written report." *Id.* More significantly, she spent more time speaking with the husband than the wife and taped a conversation between the parties without the wife's knowledge. *Id.* Therefore, the court concluded the guardian "did not afford each party a balanced opportunity to interact with her. Her method of evaluation created a high potential for bias towards Husband." *Id.* at 286, 555 S.E.2d at 389. With the interim standards as a guide, the court remanded the custody decision for a new hearing. *Id.* at 289, 555 S.E.2d at 390.

In 2002, the legislature responded to *Patel's* invitation for action by passing S.C.Code Ann. §§ 20–7–1545 through—1557. As the *Patel* court observed, several statutes dealing with GALs were already in existence. *See* 347 S.C. at 287, 555 S.E.2d at 389 ("The legislature has enacted some statutes regarding GALs. In the context of children, the legislature has enacted S.C.Code Ann. § 20–7–121 (Supp.2000) (creating a GAL program for children in abuse and neglect proceedings); Section 2[0]–7–1570 (mandating the appointment of a GAL for children involved in a termination of parental rights proceeding); Section 20–7–952 (requiring a GAL in a paternity action); and Section 20–7–1732 (requiring the appointment of a GAL for children involved in an adoption proceeding)."). The 2002 act provides comprehensive, coherent guidance for guardians in private custody disputes, guidance that was lacking in pre-*Patel* days. In essence, the statute codifies the *Patel* standards. *See Pirayesh v. Pirayesh,* 359 S.C. 284, 293, 596 S.E.2d 505, 510 (Ct.App.2004) (noting § 20–7–1549 codifies the *Patel* guidelines "with more specificity"). However, §§ 20–7–1545 through—1557 only apply to guardians appoint-

ed on or after January 15, 2003, the date the act took effect. The guardian in the instant case was appointed on May 23, 2001. Consequently, *Patel* and its progeny control.

Since *Patel*, the appellate entities of this State have twice addressed the independence and objectivity of an appointed guardian. *Pirayesh v. Pirayesh*, 359 S.C. 284, 596 S.E.2d 505 (Ct.App.2004), was "different from *Patel* in that Wife's argument stem[med], not from the guardian's incomplete investigation of her, but rather from the guardian's allegedly superficial investigation of Husband's parenting abilities." *Id.* at 294, 596 S.E.2d at 511. We opined that "the requirements set forth in *Patel* were meant not only to protect the parents who are the subjects of the guardian's investigation but also to ensure that the fate of a child's living arrangements does not rest in the hands of a guardian whose investigation is biased or otherwise incomplete." *Id.*

Factually, the *Pirayesh* court found the guardian had conducted a "superficial investigation" of the husband. *Id.* at 295, 596 S.E.2d at 511. While she "visited Wife's home several times to interview her and the children," there was "no indication that she ever interviewed Husband and the children while they visited his home in Charlotte." *Id.* Further, the GAL's recommendation that the children be placed with the husband "was largely based upon the concerns of the children's counselor regarding counseling appointments they had missed and a psychological evaluation that had still not been scheduled for the parties' daughter." *Id.* Yet, evidence suggested both parties were responsible for these acts of omission. *Id.* Additionally, the guardian incorrectly testified that one child had nine unexcused absences while in Wife's care, when actually she had only five excused absences. *Id.* "While this mistake by the guardian appeared to be inadvertent, the guardian was adamant during her testimony that the daughter had four additional unexcused absences." *Id.* (footnote omitted). Concomitantly, we agreed with the wife that "the guardian's recommendation did not result from a fair and impartial investigation" under *Patel*, and we remanded for a new custody hearing. *Id.* at 296–97, 596 S.E.2d at 511–12.

*Latimer v. Farmer*, 360 S.C. 375, 602 S.E.2d 32 (2004), afforded the South Carolina Supreme Court an opportunity to

apply *Patel.* The parties were divorced, and the father had custody of their minor child. *Id.* at 379, 602 S.E.2d at 34. When the father decided to relocate from South Carolina to Michigan, the mother and her parents petitioned the family court for a permanent restraining order. *Id.* The family court "concluded it to be in Child's best interests to allow Father to move to Michigan with Child." *Id.* Mother appealed, contending the guardian failed to adhere to the *Patel* standards. Mother's argument was rebuffed by the court's conclusion that "the guardian meticulously conducted an independent, balanced, and impartial investigation." *Id.* at 387, 602 S.E.2d at 38. Unlike *Patel,* where the guardian's investigation "overwhelmingly favored the husband," the guardian in *Latimer* "showed no bias or prejudice in the investigation." *Id.* at 388, 602 S.E.2d at 38. Rather, she submitted two reports and visited the mother on several occasions, commenting that the mother's residence was " 'very adequate,' " and that "Mother did a good job with Child, takes good care of her and her husband seemed 'very genteel.' " *Id.* Finally, although the father lived in Michigan, the GAL observed him and the child on two occasions, and she requested that the father send a portfolio of information regarding the town in which he lived, his residence, and the local schools. *Id.* Therefore, the family court's custody decision was upheld. *Id.*

Here, the family court found the GAL "conducted an extremely thorough investigation of this matter." The GAL compiled two separate reports to assist the court in its custody decision. She interviewed sixteen individuals, including the parties, their children, the maternal grandmother, counselors, neighbors, teachers, and fellow employees. Among other documents, the guardian reviewed counseling records, school files, psychological evaluations, and police reports. She visited both homes, and she orchestrated counseling for the parties and the children.

The GAL spent time with both parents and all three children. However, Mother claims the guardian did not observe the children while in the care of both parents. The fragmented Record on Appeal does not provide a full picture as to the reasons behind this alleged failure. The only evidence that the GAL did not see the children in Mother's care is a page of the trial transcript which is provided out of sequence, and,

therefore, out of context. Mother states, "She called me and she said that she's coming to the house." "She" is never identified because the preceding nine pages of trial testimony are omitted. Even so, it appears from this testimony that on one occasion the GAL scheduled an appointment to observe the children with Mother, but, in Mother's words, the children "refused to come." Furthermore, the cross-examination of the guardian conducted by Mother's counsel is not part of the record. Consequently, we are **not** persuaded that the guardian's investigation fell short of the balanced and impartial standard of *Patel.*

We find that, unlike in *Patel,* the guardian in this case gave a balanced opportunity for both sides to interact with her, and her method of evaluation **did not** create a potential for bias in favor of Father. She fairly and thoroughly served as an advocate for the children's interest.

Further, the evidence in the record supports the findings of the GAL. The relationships between Mother and her three children are negativistic. As stated by the family court, Mother "attempts to rule by harangue rather than reason; by vituperation rather than nurture." Mother offered no testimony or other evidence supporting her proposition the GAL's recommendation unjustly favored the husband. After reviewing the record, we are convinced that the guardian's investigation was independent, balanced, and impartial. Therefore, we affirm the grant of custody to Father.

## II. The GAL's Fee

■ Mother argues the family court erred in ordering her to pay a percentage of the GAL fees. We disagree.

■ An award of GAL fees lies within the sound discretion of the family court judge and will not be disturbed on appeal absent an abuse of that discretion. *Shirley v. Shirley,* 342 S.C. 324, 341, 536 S.E.2d 427, 436 (Ct.App.2000). In the present case, in which we have determined the GAL conducted an independent, balanced, and impartial investigation, it is not an abuse of discretion to require Mother to bear the cost for 22%, or a total of $1,543, of the GAL fees. This requirement is fair and should not create a hardship, considering that the court awarded Mother alimony, did not require her to pay

child support, and provided that she could pay the GAL fee at a rate of $50 per month. Accordingly, we affirm the ruling of the family court.

## III. Distribution of the Marital Estate

■ Mother challenges the family court's overall distribution of the marital estate, alleging the distribution was neither fair nor equitable. We disagree.

■ "The doctrine of equitable distribution is based on a recognition that marriage is, among other things, an economic partnership." *Mallett v. Mallett,* 323 S.C. 141, 150, 473 S.E.2d 804, 810 (Ct.App.1996). "Upon dissolution of the marriage, marital property should be divided and distributed in a manner which fairly reflects each spouse's contribution to its acquisition, regardless of who holds legal title." *Morris v. Morris,* 335 S.C. 525, 531, 517 S.E.2d 720, 723 (Ct.App.1999). In making an equitable distribution of marital property, the family court must, among other things: (1) identify the marital property, both real and personal, to be divided between the parties; (2) determine the fair market value of the identified property; (3) apportion the marital estate according to the contributions, both direct and indirect, of each party to the acquisition of the property during the marriage, their respective assets and incomes, and any special equities they may have in marital assets; and (4) provide for an equitable division of the marital estate, including the manner in which the distribution is to take place. *Noll v. Noll,* 297 S.C. 190, 375 S.E.2d 338 (Ct.App.1988).

The family court valued the marital estate at $83,609. The valuation included all marital assets: equity in the marital home, $78,530; time-share in Hilton Head, $10,900; Mazda automobile, $3,000; Toyota automobile, $3,000; household furnishings, $5,000; jewelry, $3,550; 401K, $7,796; and marital debt, $28,167. The family court found that "Husband's direct contributions to the acquisition of property is far greater than the Wife's." Therefore, the estate was apportioned 60% to Father, 40% to Mother. Finally, the court distributed the assets as follows: Father received the marital residence, the Mazda, half of the household furnishings, and all of the couple's outstanding debt, for a total distribution of $55,863;

Mother received the Hilton Head time-share, the Toyota, the jewelry, the 401K, and half of the household furnishings, for a total distribution of $27,746. Father was then ordered to pay Mother $5,697 to accomplish the appropriate 60/40 apportionment. We find this division of the marital estate to be fair and equitable given the facts of this case. Accordingly, we affirm the equitable distribution effectuated by the family court.

### IV. Award of the Marital Residence

 Mother argues the family court erroneously awarded the marital residence to Father and that she should have been given the house as an incident of support. We disagree.

 When evaluating the efficacy of a disposition of the marital residence, distinction must be drawn between an award that is incident to support—either child or spousal—and an assignment that is part of the equitable distribution of the parties' assets. A review of South Carolina case law demonstrates that awards incident to support may be made only where compelling circumstances exist, while title to the residence may be given to one of the parties in compliance with the ordinary rules of equitable distribution.

 South Carolina recognizes that use of the marital home may be granted as an incident of support. *See Whitfield v. Hanks,* 278 S.C. 165, 293 S.E.2d 314 (1982); *Tucker v. Tucker,* 282 S.C. 261, 264, 317 S.E.2d 764, 767 (Ct.App.1984) ("An award of possession of the marital home is an incident of support and not a division of property."). In *Johnson v. Johnson,* 285 S.C. 308, 311, 329 S.E.2d 443, 445 (Ct.App.1985), we stated that "[b]eginning with the pronouncement in [*Whitfield*], ... our appellate courts have struggled to develop guidelines to aid the family court in determining the appropriate disposition to be made of the marital home." *Id.* (citing *Tucker v. Tucker,* 282 S.C. 261, 317 S.E.2d 764 (1984); *Thompson v. Brunson,* 283 S.C. 221, 321 S.E.2d 622 (Ct.App. 1984); *Shafer v. Shafer,* 283 S.C. 205, 320 S.E.2d 730 (Ct.App. 1984); *Jones v. Jones,* 281 S.C. 96, 314 S.E.2d 33 (Ct.App. 1984); *Smith v. Smith,* 280 S.C. 257, 312 S.E.2d 560 (Ct.App. 1984)). The *Johnson* court amalgamated these attempts and provided the following instruction:

First, the family court must begin with the premise that division and distribution of the marital home should be accomplished at the time of entry of the judgment of divorce .... the family court's objective should be to dissolve the marriage, sever all entangling legal relations and place the parties in a position from which they can begin anew....

Second, the court must carefully consider the claim of a party that the interests of that party or the children are so predominant, when balanced against the interest of the other, that an award of exclusive possession of the marital home is compelled. In *Thompson v. Brunson, supra,* and *Shafer v. Shafer, supra,* we noted some of the interests which may be considered compelling: (1) adequate shelter for minors; (2) suitable housing for a handicapped or infirm spouse; and (3) the inability of the occupying spouse to otherwise obtain adequate housing.

In this same context, the court must consider the interests of the non-occupying spouse. An award of exclusive possession to one party requires that the other defer the realization of the value of his share of the marital home. Such a requirement is usually a burden. Therefore, before the family court imposes such a burden, it should consider the size and expansiveness of the home in relation to the expected use and the cost of maintaining the home in comparison to the benefits received. Further, the court must consider the potential duration of the exclusive possession. The family court may not award exclusive possession of the marital home for an unlimited period of time. In the exercise of sound discretion, the court must make the award for a reasonable time based on the circumstances warranting the award in the first instance. *See Thompson v. Brunson,* 321 S.E.2d at 625.

Finally, the family court must make some provision in its order for eventual distribution of the marital home and state the terms upon which such distribution will be made.

*Johnson,* 285 S.C. at 311–312, 329 S.E.2d at 445–46.

*Chastain v. Chastain,* 289 S.C. 281, 346 S.E.2d 33 (Ct.App. 1986), illustrates when an award of exclusive use of the marital home is proper. In *Chastain,* the court granted the wife custody of the parties' children, one of whom suffered from

Down's syndrome. Wife additionally was given "exclusive use and possession of the marital home ... until either she marries or the parties' mentally retarded son dies[.]" *Id.* at 282, 346 S.E.2d at 34. We concluded that, under these facts, "special circumstances exist." *Id.* The boy's life expectancy was between twenty and forty years, and the house was located in a secluded neighborhood in which the boy was looked after by the neighbors. Therefore, we found no abuse of discretion in the trial judge's award. *Id. See also Harlan v. Harlan,* 300 S.C. 537, 389 S.E.2d 165 (Ct.App.1990) (upholding the family court's award of the marital residence, as an incident of support, to wife who was awarded custody of the parties' four children on the basis of need for adequate shelter, and providing that husband could petition for modification after the two oldest children reached the age of majority).

*Gambrell v. Gambrell,* 295 S.C. 457, 369 S.E.2d 662 (Ct.App. 1988), and *Morris v. Morris,* 335 S.C. 525, 517 S.E.2d 720 (Ct.App.1999), are cases where awarding exclusive use of the parties' home was not appropriate because the requisite special circumstances were not shown. In *Gambrell,* the court of appeals, affirming the trial court, declined to award wife exclusive possession of the parties' residence because she "established no compelling circumstances as to her needs when balanced against the husband's to warrant her receiving exclusive possession of the marital home." *Id.* at 462, 369 S.E.2d at 664 (citation omitted).

In *Morris,* wife appealed the family court's decision not to award her exclusive use of the marital home as an incident of support. Affirming, we noted the only two assets of significant value were the house and a retirement account. Thus, awarding wife with exclusive use of the residence would have left husband with "no liquid assets with which to establish his new life, apart from the income he earns." *Morris* at 534, 517 S.E.2d at 725. Moreover, we found that after considering the alimony and child support wife would be receiving, along with an anticipated increase in her earning potential, it would be possible for wife to purchase husband's equity and thereby keep the house. *Id.* at 534–35, 517 S.E.2d at 725. Consequently, we affirmed the family court's decision not to award exclusive use of the home to wife. *Id.*

Separate and distinct from cases where possession of the marital home is awarded as incident to support are cases where the residence is given to one party as part of his or her equitable share of the entire marital estate.

In *Donahue v. Donahue*, 299 S.C. 353, 384 S.E.2d 741 (1989), "the [trial] judge awarded the wife title to the marital home, specifically allowing that this would serve as part of her equitable distribution award." *Id.* at 360, 384 S.E.2d at 745. Husband appealed, arguing the court could not award her title to the house as part of the equitable distribution. Our supreme court held, "Appellant incorrectly contends that this was error and that title to a marital home can only be awarded as an incident of support, and then only if compelling circumstances exits." *Id.* The court explained:

In order to effect an equitable apportionment, the family court may require the sale of marital property and a division of the proceeds. S.C.Code Ann. § 20–7–476 (Supp. 1987). The court should first attempt an "in-kind" distribution of the assets. *Stevenson v. Stevenson*, 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988). A family court may grant a spouse title to the marital home as part of the equitable distribution. *Brown v. Brown*, 279 S.C. 116, 302 S.E.2d 860 (1983).

Here, the wife received the marital home as her share of the total marital estate, not as an incident of support. Part of the reason she was awarded the home was to compensate her for the $23,000 she was entitled to as a result of contributions to the husband's dental practice. Since we have ruled above that she was not entitled to this $23,000, as it was based only on goodwill, we must also remand the award of the marital home for reconsideration. Accordingly, while the husband is incorrect in arguing that the court could not award the wife title, we must nonetheless remand because of our decision on the goodwill issue.

*Id.* at 360–61, 384 S.E.2d at 745.

*Craig v. Craig*, 358 S.C. 548, 595 S.E.2d 837 (Ct.App.2004), *cert. granted* (Aug. 23, 2004) is our most recent proclamation on the award of a residence as part of the equitable distribution of the marital estate. In *Craig*, the family court did not award wife the marital home; instead, it required her to either

buy out her Husband's share of the equity, or sell the residence. Relying on *Donahue,* we disagreed and awarded the home to the wife as part of her division of the marital estate. We noted that S.C.Code Ann. § 20–7–472 (Supp.2003) provides that the court, in making apportionment, " 'must give weight in such proportion as it finds appropriate to all of the following factors ... (10) the desirability of awarding the family home as part of equitable distribution.' " 358 S.C. at 558, 595 S.E.2d at 842. Ultimately, we determined it was "not equitable for the home to be sold and Wife required to move from the marital home." *Id.* The parties had a marital estate valued at approximately $2,450,000. We redistributed the assets of the estate to give the wife the marital home while maintaining the apportionment of 50% of the estate to each party as ordered by the family court. *Id.* at 558–58, 595 S.E.2d at 843.

An award of exclusive use of the marital home as incident of support must be supported by compelling circumstances, which include the need for adequate shelter for minors, the necessity of suitable housing for a handicapped spouse, and a spouse's inability to otherwise obtain accommodations. The policy behind this requirement that specific, compelling circumstances be shown is sound. By awarding possession of the residence as an incident of support, the court leaves intact one of the cords of marriage. Often, the parties' marital home will be their most valuable asset. The parties will be in a better position to begin new lives if the ligature of joint ownership of the home is severed; both parties will have their share of the equity, and they will not get entangled over such things as maintaining and eventually selling the house. However, these policy reasons are not so compelling to preclude an award of exclusive possession in the narrow circumstances outlined in *Johnson.* Thus, the need for adequate housing—especially where children are involved—may outweigh the parties' interests in settling their affairs and obtaining their portion of equity in the home. In these situations, an award of exclusive use of the house may be appropriate.

Contrastively, the disposition of the residence in the context of equitable distribution of the marital estate is largely within the discretion of the family court. Although the court

is generally required to attempt an in-kind distribution of assets, an in-kind distribution of the marital home is not feasible. Accordingly, the court may either award the home to one of the parties, or order the home sold and the proceeds distributed. Because the court's apportionment determines the ultimate share of the estate each party will receive, whether the house is awarded to one party or is sold has no effect on the value of the property allocated to each spouse. Consequently, the policy reasons supporting the hurdles set forth in *Johnson* are not present when the residence is awarded to one party as part of his or her equitable share of the estate. Equity is unaffected—the party either gets the house or the value of his or her share of the equity—and the "disputes and irritants do not linger," because disposition of the home is final. *See Johnson,* 285 S.C. at 311, 329 S.E.2d at 445 ("If possible, all issues between the parties should be resolved ... so that disputes and irritants do not linger and present further incentives to litigation.").

We hold the family court did not abuse its discretion by awarding Father the home as part of his equitable distribution of the estate. First, we reject Mother's contention that the award to Father delays her realization of equity in the house, thereby imposing a burden upon her. Mother's 40% interest in the equity was recognized and accounted for in the family court's distribution of the assets. Of the $83,609 estate, Mother was awarded cash and property valued at $33,443, or 40% of the estate. She has been awarded her share of the equity in the marital residence.

Furthermore, Mother's citations to *Johnson* and *Morris* are inapplicable as those cases address awards of exclusive use of the marital home as incident of support. Father was not awarded use of the residence as incident of support; he was awarded title to the house as part of his share of the marital estate. *Donahue* and *Craig* control, and those cases establish that a judge may award the marital home as part of the distribution of the estate.

Finally, we reject Mother's assertion that she should have been given use of the home as an incident of support. The compelling circumstances involving shelter for children do not apply because Mother was not awarded custody of the

children. Similarly, we do not find that Mother is handi-capped, or is otherwise unable to find suitable housing. At the time of the hearing she resided in an apartment, and her then-monthly income of $702 is now being supplemented by the family court's award of $1,300 per month in alimony to her. She has not made a sufficient showing to justify an award of use of the house as an incident of support.

## V. Award of Personal Property

Mother argues the family court erred in failing to award her separate personal property. We disagree. Mother did not offer a marital asset addendum or other evidence concerning the identity or value of the personal household property she now claims. The family court evenly appor-tioned the household furnishings and granted Mother the full amount of her jewelry. We can find no abuse of discretion requiring an alteration of this award.

## VI. Attorney's Fees

Lastly, Mother alleges the family court erred in failing to award attorney's fees. We disagree.

The award of attorney's fees is at the sound discretion of the family court. *See Stevenson v. Stevenson,* 295 S.C. 412, 368 S.E.2d 901 (1988). In deciding whether to award attorney's fees, the family court should consider: (1) the parties' ability to pay their own fees; (2) the beneficial results obtained by counsel; (3) the respective financial condi-tions of the parties; and (4) the effect of the fee on each party's standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 415 S.E.2d 812 (1992); *Shirley v. Shirley,* 342 S.C. 324, 536 S.E.2d 427 (Ct.App.2000). Our supreme court has identified the following factors for determining a reasonable attorney's fee: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services. *Glasscock v. Glasscock,* 304 S.C. 158, 403 S.E.2d 313 (1991).

In this matter, both parties succeeded on some aspects of their respective claims. Father received custody and sole

financial responsibility for the support of the three minor children. Further, the parties' fiscal situations are comparable. After factoring in Father's alimony obligation, both parties' monthly expenses outweigh their monthly income. Therefore, we find the family court did not abuse its discretion in deciding each party would bear his or her own attorney's fees and costs. As a result, we affirm the court's determination.

## CONCLUSION

We hold the guardian in the instant case conducted a fair and unbiased investigation, and we affirm the family court's award of custody. Further, we find no abuse of discretion in the allocation of responsibility for the GAL's fees. We approve the family court's order in regard to equitable distribution of the marital property and the award of the residence to Father as part of his share of the estate. The court adequately allocated the parties' personal property and properly denied attorney's fees. Accordingly, the decision of the family court is hereby

**AFFIRMED.**

STILWELL and SHORT, JJ., concur.