670 S.E.2d 669

**Donald R. FELDMAN, Appellant/Respondent,**

**v.**

**Francine FELDMAN, Respondent/Appellant.**

**No. 4452.**

Court of Appeals of South Carolina.

Heard Oct. 8, 2008.

Decided Oct. 29, 2008.

540

J. Mark Taylor, of West Columbia and Peggy McMillan Infinger, of Charleston, for Appellant/Respondent.

Beth Ann Gilleland, of Bluffton, for Respondent/Appellant.

WILLIAMS J.:

In this family law action, Donald Feldman (Husband) appeals the family court's decision not to terminate his obligation to pay Francine Feldman's (Wife) alimony. Wife appeals the family court's decision not to award her attorney's fees. We affirm in part, reverse in part, and remand.

## FACTS

Husband and Wife were divorced in June 2000. Husband was required to pay Wife permanent periodic alimony in the amount of $4,500 per month. In May 2004, Husband's obligation was reduced to $4,000 per month. In September 2005, Husband brought an action to have his alimony obligation terminated pursuant to the continued cohabitation provision of section 20–3–130(B)(1) of the South Carolina Code (Supp. 2007), claiming Wife and Frank Watson (Boyfriend) had engaged in a romantic relationship and resided together for a period of ninety or more consecutive days. Wife and Boyfriend did not deny the romantic relationship, but both disputed the claim of cohabitation.

Wife and Boyfriend became acquainted in the latter part of 2002. Wife characterized the nature of their relationship at that time as acquaintances. However, the two became romantically involved in August 2003. In October 2003, Wife invested approximately $50,000 in Boyfriend's business.[1] As security for her investment Wife received fifty percent of the stocks in this business. Subsequently, Wife became the sole owner of Decorative Concrete and Design as a result of additional investments.

Husband became suspicious of the relationship between Boyfriend and Wife and hired Randy Caulder (Caulder), a private investigator, in April 2005 to investigate the matter. Consequently, Caulder began surveillance of Wife's condominium. The surveillance entailed Caulder periodically checking to see what vehicles were at Wife's residence in the evenings and mornings. Wife's condominium complex had numbered parking slots corresponding to each condominium. Wife, who resided in condominium number 302, was assigned two parking slots enumerated as 302 and 302 visitor.

Caulder testified that on multiple occasions he observed a BMW and a silver Chevrolet pickup in parking spaces 302 and 302 visitor, respectively. According to Caulder, the BMW belonged to Wife and the pickup belonged to Boyfriend. Caulder explained that in the evening Wife would park the

---

1. Boyfriend's business is entitled Decorative Concrete and Design Incorporated, which specializes in concrete décor.

BMW in spot 302 and enter her condominium. Shortly thereafter, Boyfriend would park his pickup in spot 302 visitor and go into Wife's condominium.

On a few occasions, Caulder arrived early in the morning at the condominium complex and observed Boyfriend exiting Wife's condominium, get in his pickup and leave. Thus, Caulder could at least place Boyfriend's vehicle at Wife's residence late at night and early in the morning. Additionally, Caulder interacted with Boyfriend at Wife's condominium on two occasions.

In the first instance, Caulder was commissioned by a law firm to serve papers on Boyfriend. As a result, Caulder went to Wife's condominium and found Boyfriend there. The second time, Caulder was instructed to serve papers on Wife. Once again, Caulder arrived at Wife's condominium and found Boyfriend there. Caulder left the papers with Boyfriend along with instructions that the papers were to be given to Wife when she arrived home.

Upon hearing all the evidence, the family court found Husband had failed to carry his burden of proof to show Wife and Boyfriend engaged in continued cohabitation for ninety or more consecutive days pursuant to section 20-3-130(B)(1). Based on this, the family court did not terminate Husband's obligation to pay Wife alimony. The family court further denied Wife's request for attorney's fees. Both parties appeal.

## STANDARD OF REVIEW

In appeals from the family court, this Court may find facts in accordance with its own view of the preponderance of the evidence. *Nasser–Moghaddassi v. Moghaddassi*, 364 S.C. 182, 189–90, 612 S.E.2d 707, 711 (Ct.App.2005). However, this broad scope of review does not require this Court to disregard the family court's findings. *Id.* Nor must we ignore the fact that the family court judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Id.* However, our broad scope of review does not relieve the appellant of the burden of convincing this Court that the family court committed error. *Id.*

LAW/ANALYSIS

## I. Husband's appeal

█ Husband argues the family court erred in failing to find Wife engaged in continued cohabitation with Boyfriend and, therefore, erred in not terminating alimony. Husband also contends the family court's final ruling is contradicted by its ruling at the directed verdict stage. We disagree.

Section 20–3–130(B)(1) allows for the termination of alimony upon "the remarriage or continued cohabitation of the supported spouse...." The statute states:

> For purposes of this subsection and unless otherwise agreed to in writing by the parties, "continued cohabitation" means the supported spouse resides with another person in a romantic relationship for a period of ninety or more consecutive days. The court may determine that a continued cohabitation exists if there is evidence that the supported spouse resides with another person in a romantic relationship for periods of less than ninety days and the two periodically separate in order to circumvent the ninety-day requirement.

§ 20–3–130(B).

The continued cohabitation requirement necessitates the supported spouse reside with another person for ninety or more consecutive days. *Id.* The term "reside," as used in this context, has recently been explained to mean that "the supported spouse live under the same roof as the person with whom they are romantically involved for at least ninety consecutive days." *Semken v. Semken,* 379 S.C. 71, 76, 664 S.E.2d 493, 496 (Ct.App.2008) (citing *Strickland v. Strickland,* 375 S.C. 76, 89, 650 S.E.2d 465, 472 (2007)).

In the case at hand, Husband relies heavily on the testimony of Caulder in arguing the family court's finding that Wife and Boyfriend did not engage in continued cohabitation should be reversed. Caulder was hired to perform surveillance on Wife's residence on April 2005. As noted above, Caulder testified that Boyfriend drove a Chevrolet pickup truck. Caulder performed surveillance on Wife's residence only twenty-one times.

Of these days, ten were before June 13, 2005. However, a bill of sale produced at trial showed Boyfriend purchased the pickup on June 13, 2005. This negated any possibility of Caulder observing Boyfriend driving, entering, or exiting the pickup prior to June 13, 2005. Such evidence falls well short of the ninety day requirement mandated by section 20–3–130(B)(1).

Caulder admitted he did not know whether Wife and Boyfriend lived together. Caulder also admitted he could not state if Boyfriend ever stayed the night at Wife's condominium. Additionally, Caulder conceded he did not know whether Boyfriend and Wife had stayed together for ninety or more days. Moreover, testimony produced at trial supported the conclusion that Husband failed to carry his burden of proof.

Both Boyfriend and Wife freely admitted the romantic nature of their relationship, but both denied that Boyfriend had stayed with Wife for ninety or more days. Such assertions may appear to be self-serving, but they were corroborated by testimony from individuals who visited or stayed with Wife in her residence.

For example, Wife's friend Marian Nalven, who characterized her relationship with Wife as that of mother and daughter, testified that Wife lived alone. Wife's friend Kathy Nalven, who characterized her relationship with Wife as that of sisters, also stated that Wife lived alone. Karin Gutierrez, who has known Wife all her life, testified that Wife did not live with anyone. Wife's former employee Lana Brantley stated that Wife lived alone. Wife's next door neighbor of two years testified Wife lived alone. Another of Wife's friends, Janice Malafronte, stated Wife was the sole occupant of her condominium. Wife and Husband's son, Paul Feldman, who characterized his relationship with his mother as excellent, testified Wife stayed alone.

Based on the foregoing, the family court did not err in determining Husband failed to carry his burden of proof to show Wife and Boyfriend engaged in continued cohabitation for ninety or more consecutive days pursuant to section 20–3–130(B)(1). *See Nasser–Moghaddassi*, 364 S.C. at 190–91, 612 S.E.2d at 711 (noting the family court judge, who saw and heard the witnesses, was in a better position to evaluate their

credibility and assign comparative weight to their testimony and the appellant bears the burden of convincing this Court that the family court committed error).

■ Husband also maintains the family court's decision not to terminate alimony should be reversed because Wife's and Boyfriend's relationship was tantamount to marriage. Husband's complaint listed two grounds for termination of alimony. First, pursuant to section 20–3–170 of the South Carolina Code (Supp.2007) a family court may terminate an award of alimony when the circumstances of the parties have changed. Husband argued the change in circumstances is that Wife and Boyfriend's relationship is tantamount to marriage. Second, Husband relied on the continued cohabitation for ninety or more consecutive days pursuant to section 20–3–130(B)(1) to terminate alimony. In its order, the family court stated, "The [Husband] did not prove ... [Wife] is co-habitating with [Boyfriend] as defined in [section 20–3–130] nor did ... [Husband] provide any proof ... [Wife] and [Boyfriend] were attempting to circumvent the ninety (90) day rule as contemplated by [section 20–3–130]. . . ." The family court never ruled on whether Wife's and Boyfriend's relationship was tantamount to marriage. In South Carolina for an issue to be preserved for appellate review it must be raised to and ruled upon by the lower court. *Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (holding for an issue to be preserved for appeal it must have been raised to and ruled upon by the lower court). Thus, this issue is not preserved for our review.

Additionally, South Carolina case law clearly states "[a] party *must* file [a rule 59(e)] motion when an issue or argument has been raised, but not ruled on, in order to preserve it for appellate review." *Elam v. S.C. Dep't of Transp.,* 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) (emphasis in original). In the present case Husband failed to make a Rule 59(e), SCRCP, motion when the family court did not rule on whether Boyfriend's and Wife's relationship was tantamount to marriage. Consequently, this issue is not preserved for review. *Id.*

■ Husband also argues the family court's final ruling is contradicted by its ruling at the directed verdict stage. At the conclusion of Husband's case-in-chief, Wife made a motion for

a directed verdict. The family court denied this motion. In so doing, the family court held there was some evidence of cohabitation, presumably based on the testimony of Caulder. In its final ruling, the family court held Husband failed to provide "any proof" that Wife and Boyfriend were attempting to circumvent the ninety day requirement of section 20-3-130. Husband maintains these two rulings are contradictory. Because Husband fails to cite authority in support of his argument, we consider the argument abandoned. *Glasscock, Inc. v. U.S. Fid. & Guar. Co.,* 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct.App.2001) (holding statements made without supporting authority are deemed abandoned on appeal and are not presented for review).

## II. Wife's Appeal

■ Wife argues the family court erred in failing to award her attorney's fees. As a result of this litigation, Wife has incurred attorney's fees in the amount of $22,038.05. We agree.

■ The family court has discretion in deciding whether to award attorney's fees, and its decision will not be overturned absent an abuse of discretion. *Donahue v. Donahue,* 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989). An abuse of discretion occurs when the decision is controlled by an error of law or is based on factual findings that are without evidentiary support. *Degenhart v. Burriss,* 360 S.C. 497, 500, 602 S.E.2d 96, 97 (Ct.App.2004).

■■ In deciding whether to award attorney's fees, the family court should consider the following: (1) each party's ability to pay his or her own fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the fee on each party's standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). If an award of attorney's fees is appropriate, the reasonableness of the fees should be determined according to: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; (5) the beneficial results obtained; and (6) the

customary legal fees for similar services. *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

In adjudicating Wife's claim for attorney's fees, the family court stated, "Under the fact enunciated in *Glasscock v. Glasscock* . . . each party should be responsible for their own attorney fees and costs as a result of this litigation." The family court failed to make any findings regarding whether Wife was entitled to attorney's fees under the factors set out in *E.D.M. v. T.A.M.* Rather, the family court considered the *Glasscock* factors which deal with determining the reasonableness of attorney's fees. Therefore, the issue of whether Wife is entitled to attorney's fees is remanded back to the family court so that it may consider the factors set out in *E.D.M. v. T.A.M.* If the family court determines Wife is entitled to attorney's fees, it should then consider the reasonableness of such fees based on the *Glasscock* factors.

▉ The family court should comply with Rule 26(a), SCRFC, which states, "An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision." *Holcombe v. Hardee*, 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991) (reversing and remanding a case back to the family court because the family court's order failed to comply with Rule 26(a), SCRFC, in that the family court listed the factors to be considered for child support and stated it had considered them but failed to make findings of facts concerning those factors).

## CONCLUSION

Accordingly, the family court's decision is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

ANDERSON and KONDUROS, JJ., concur.