702 S.E.2d 253

**Carolyn Jackson MOSLEY, Respondent,**

v.

**Rollin Arnold MOSLEY, Appellant.**

No. 4759.

Court of Appeals of South Carolina.

Submitted Sept. 1, 2010.

Decided Nov. 10, 2010.

---

526

James Wilson Tucker, Jr., of Rock Hill, for Appellant.

Daniel D. Agostino, of York, for Respondent.

WILLIAMS, J.

In this divorce action, Rollin Mosley (Husband) assigns several errors to the family court's final decree, including: (1) its calculation of Husband's monthly child support obligation based on Carolyn Mosley's (Mother) alleged childcare costs; (2) its decision to require Husband to pay retroactive child support; (3) its finding that Husband withdrew a second mortgage on the parties' home without Wife's consent; (4) its apportionment of the equity in the marital home; and (5) its award of attorney's fees and costs. We affirm in part, reverse in part, and remand.

## FACTS

Husband and Wife were married for approximately one year prior to Wife filing this action on August 7, 2006. In her complaint, Wife sought a divorce on the ground of one year's continuous separation and requested sole custody of the parties' one-year-old child as well as child support, equitable division of the marital estate, and reasonable attorney's fees

and costs. Husband answered and counterclaimed for joint custody and sought an annulment of the parties' marriage based on the parties' failure to consummate their marriage.

On August 6, 2008, the family court granted Wife and Husband a divorce on the ground of one year's continuous separation. Wife was awarded sole custody of the parties' child and Father was granted liberal visitation. In setting Husband's child support obligation at $277.77 per week, the family court found Mother provided daycare for the child at the cost of $390 per month; both parties paid the child's medical insurance; and Husband was responsible for one other child in his home. The family court also included a $25 weekly payment towards Husband's child support arrearage until Husband paid the arrearage in full. Husband's arrearage was based on the family court's finding that Husband misstated his income on his financial declaration submitted at the temporary hearing by failing to account for his military retirement and stating his net as opposed to his gross income.

In the final order, the family court found the parties' home and lot in Clover, South Carolina, to be marital property. The family court stated the absence of evidence, specifically the lack of an appraisal at the time the parties executed their first mortgage for $377,455, created a valuation issue for purposes of equitably dividing the home.[1] As a result, the family court resorted to a recent appraisal, which valued the house and lot at $415,000.

Additionally, the family court found that after litigation commenced, Husband took out a second mortgage on the parties' home in the amount of $77,000 without Wife's consent. The family court determined the $77,000 represented the remaining equity in the home and concluded Wife was entitled to half of this sum, $38,500, as her share of the value of the home. Husband was ordered to pay this amount to Wife as well as $3,880 in Wife's attorney's fees.

The family court, however, failed to divide the remainder of the marital estate, or in the alternative, to find the parties had mutually resolved the distribution of their remaining assets.

---

1. We recognize that marital property is generally valued on the date marital litigation is filed or commenced. *See Fields v. Fields*, 342 S.C. 182, 186, 536 S.E.2d 684, 686 (Ct.App.2000).

Moreover, the court failed to mention or discuss any statutory factors it considered in equitably dividing the marital estate and only specified one other piece of property, Wife's Suzuki motorcycle, which was subject to equitable distribution.

Husband filed a Rule 59(e), SCRCP, motion for reconsideration, which the family court denied. This appeal followed.

## ISSUES ON APPEAL

Husband contends the family court erred in (1) its child support calculation and award of retroactive child support; (2) its calculation and division of equity in the marital home; and (3) its award of attorney's fees and costs.

## STANDARD OF REVIEW

In appeals from the family court, this court may find facts in accordance with its own view of the preponderance of the evidence. *Nasser–Moghaddassi v. Moghaddassi,* 364 S.C. 182, 189, 612 S.E.2d 707, 711 (Ct.App.2005). However, this broad scope of review does not require this court to disregard the family court's findings. *Id.* at 189–90, 612 S.E.2d at 711. When evidence is disputed, the appellate court may adhere to the findings of the family court, who saw and heard the witnesses. *Id.* at 190, 612 S.E.2d at 711. The family court was in a superior position to judge the witnesses' demeanor and veracity and, therefore, its findings should be given broad discretion. *Woodall v. Woodall,* 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996). Moreover, the court's broad scope of review does not relieve the appellant of the burden of proving to this Court that the family court committed error. *Nasser–Moghaddassi,* 364 S.C. at 190, 612 S.E.2d at 711.

## LAW/ANALYSIS

### I. Child Support

#### A. Childcare Costs

Husband first contends the family court erred in calculating his child support obligation based on Wife's alleged childcare costs. We agree.

■ Child support awards are within the family court's sound discretion and, absent an abuse of discretion, will not be disturbed on appeal. *Mitchell v. Mitchell,* 283 S.C. 87, 92, 320 S.E.2d 706, 710 (1984). An abuse of discretion occurs when the family court's decision is controlled by some error of law or when the order, based upon the findings of fact, is without evidentiary support. *Kelley v. Kelley,* 324 S.C. 481, 485, 477 S.E.2d 727, 729 (Ct.App.1996).

Wife testified at trial that she paid their child's babysitter, Ms. Allison, $390 per month for childcare. When Ms. Allison later testified, she stated Wife initially paid her $100 per week, but at Ms. Allison's insistence, the pay decreased in $10 increments to her current weekly earnings of $60 per week. Ms. Allison then stated, "When she feels like blessing me, she will give me a little more." When questioned by Husband's counsel as to whether Wife was paying Ms. Allison $390 per month, Ms. Allison stated, "When she blesses me, it add[s] up to that." Ms. Allison then reiterated that she was charging Wife $60 per week, but when Wife tells her she wants to "bless" her, she does not refuse the additional payment.

■ The family court erred in attributing $390 per month as childcare costs when the testimony presented at the final hearing established Ms. Allison only charged $60 per week. While Wife's decision to "bless" Ms. Allison with additional money on a random basis is an affable gesture, this voluntary gift given at Wife's sole discretion should not be attributed to Husband in calculating his child support obligation. *See generally Mixson v. Mixson,* 253 S.C. 436, 442–43, 171 S.E.2d 581, 584 (1969) (finding husband was not entitled to a child support credit for money he spent on his children for a beach trip or Christmas gifts because those expenditures were gratuities that were not mandated under the terms of the decree); *Foster v. Foster,* 294 S.C. 373, 375, 364 S.E.2d 753, 754 (Ct.App.1988) (citing to *Mixson* and acknowledging the general rule that voluntary expenditures not prescribed by a child support decree are gifts or gratuities); *cf. Steffenson v. Olsen,* 360 S.C. 318, 323–24, 600 S.E.2d 129, 132 (Ct.App.2004) (finding family court properly offset amount of husband's child support arrearage because husband's overpayment in child support was involuntary and not intended as a gift).

Accordingly, we reverse the family court's order insomuch as it credited Wife $390 per month in childcare when it calculated Husband's child support obligation.

## B. Retroactive Child Support

█ Husband also argues the family court erred in ordering retroactive child support to the date of filing because Wife did not request it in her pleadings and there is no basis for this award in the record. We disagree.

█ The decision to award retroactive child support rests in the sound discretion of the family court. *Kelly v. Kelly*, 310 S.C. 299, 302, 423 S.E.2d 153, 155 (Ct.App.1992).

Our courts have previously awarded retroactive child support, despite a party's failure to specifically mention it in the pleadings. *See Sutton v. Sutton*, 291 S.C. 401, 409, 353 S.E.2d 884, 888 (Ct.App.1987) (finding wife's failure to specifically mention retroactive child support by name in her petition did not deprive the family court of jurisdiction to award retroactive child support because it was appropriate based on the facts and circumstances of the case). In the case at hand, Wife requested child support in conjunction with other relief that the family court deemed just and proper. We find Wife's petition sufficient under the circumstances. *Id.* at 408, 353 S.E.2d at 888 (stating the entitlement to retroactive child support depends upon the facts and circumstances of each case).

Moreover, we find a review of the record supports an award of retroactive support. In its temporary order dated May 8, 2007, the family court determined Husband owed $147 per week in temporary child support and $4,233 in arrearages based upon Husband's financial declaration showing his gross monthly income to be $4,973. The family court recalculated the amount of Husband's arrearages in the final divorce decree based on its finding that Husband understated his gross monthly income by $1,795.85 and failed to account for $761 in monthly military retirement income.

At the final hearing, Husband conceded the pay stub submitted into evidence denoting his monthly gross income to be $6,768.65 was accurate. Because Husband's stated income on his financial declaration was at issue, Husband's pay stub was

the most credible evidence for determining child support. *See* S.C.Code Ann. Regs. § 114–4720(A)(6) (Supp.2009) ("[W]here the amounts reflected on the financial declaration may be at issue, the court may rely on suitable documentation of current earnings, preferably for at least one month, using such documents as pay stubs, employer statements, or receipts and expenses if the parent is self-employed."); *see also Spreeuw v. Barker,* 385 S.C. 45, 66–67, 682 S.E.2d 843, 853–54 (Ct.App. 2009) (upholding family court's decision to deviate from father's most recent financial declaration in imputing additional income to father for child support purposes when financial declaration understated father's gross income). The family court was within its power to rely on Husband's pay stub in adjusting Husband's child support and ensuing arrearages. *See Rogers v. Rogers,* 343 S.C. 329, 332–33, 540 S.E.2d 840, 841–42 (2001) (finding increase in monthly child support was warranted based on evidence of father's increased income); *see also Harris v. Harris,* 307 S.C. 351, 354, 415 S.E.2d 391, 393 (1992) (concluding the family court has jurisdiction to order retroactive increase in child support when party misrepresented income).

Accordingly, we affirm the family court's retroactive increase in Husband's child support obligation. We remand to recalculate child support and to modify arrearages, if any, based on our disposition regarding daycare costs. Further, the family court shall calculate Husband's present child support obligation based on the current status of the parties and include Worksheet A from the South Carolina Child Support Guidelines in its order.

## II. Equitable Distribution

Husband argues the family court erred in finding he removed $77,000 in equity by way of a second mortgage on the parties' home without Wife's consent. Moreover, Husband claims the family court erred in finding there was equity in the parties' home because the record established the mortgage indebtedness exceeded the value of the home. We agree.

The division of marital property is within the family court's discretion and will not be disturbed on appeal absent an abuse of that discretion. *Craig v. Craig,* 365 S.C.

285, 290, 617 S.E.2d 359, 361 (2005). "For purposes of equitable distribution, 'marital debt' is debt incurred for the joint benefit of the parties regardless of whether the parties are legally jointly liable for the debt or whether one party is legally individually liable." *Hardy v. Hardy*, 311 S.C. 433, 436–37, 429 S.E.2d 811, 813 (Ct.App.1993).

 First, we hold the family court erred in finding Wife did not consent to the second mortgage on the house when the testimony adduced at the final hearing clearly demonstrates otherwise. Husband testified that after marital litigation commenced,[2] he and Wife took out a second mortgage on their house to pay for construction overruns and to avoid a lien being placed on the property, which Wife acknowledged at the final hearing. Husband admitted Wife initially hesitated to sign the mortgage, but she was afforded well over a week to take her name off the mortgage before the closing. Wife presented no testimony that she signed the mortgage as a result of fraud, accident, or mistake. Wife said she was advised by counsel that she needed to sign the document to protect her rights, but she should not have been responsible because the construction of the house was solely Husband's project.

Regardless of Wife's involvement or lack thereof, she has failed to negate the fact that she knowingly signed the mortgage. Because Wife did not prove Husband instituted the second mortgage without her permission, the family court's finding on this issue was in error. *See generally Frank v. Frank*, 311 S.C. 454, 457, 429 S.E.2d 823, 825 (Ct.App.1993) (finding wife's premarital home should have been considered in equitable distribution award when both parties signed a promissory note securing a mortgage on the house and were jointly liable for the discharge of the debt).

---

**2.** Because both parties admit this debt was incurred in an effort to avoid any further encumbrances on the property, the family court properly considered it as part of the marital estate. *See Wooten v. Wooten*, 364 S.C. 532, 546, 615 S.E.2d 98, 105 (2005) ("When a debt is incurred after the commencement of litigation but before the final divorce decree, the family court may equitably apportion it as a marital debt when it is shown the debt was incurred for marital purposes, i.e., for the joint benefit of both parties during the marriage.").

 Further, we fail to see how the home contained any equity to be divided between the parties. The evidence shows the first and second mortgage totaled $454,455 and the value of the house at the time of the second mortgage was $415,000. Thus, the indebtedness on the house exceeded its worth by $39,455.[3] We find the $77,000 mortgage that the family court classified as the remaining equity in the home to be more appropriately classified as marital debt. The family court failed to explain how the remainder of the debt on the marital home was to be divided much less how the remainder of the marital estate was to be apportioned. *See Smith v. Smith,* 327 S.C. 448, 457, 486 S.E.2d 516, 520–21 (Ct.App.1997) (citing to former section 20–7–472 and stating that marital debt, like marital property, must be specifically identified and apportioned in equitable distribution). Without any findings as to what the marital estate comprises and in what proportion the parties' assets and debts are to be divided, we remand the issue of equitable distribution for further findings consistent with the mandates of section 20–3–620 of the South Carolina Code (Supp.2009).[4]

### III. Attorney's Fees

Last, Husband asserts the family court erred by (1) omitting any findings of fact to support its attorney's fees award pursuant to Rule 26(a), SCRFC, and (2) failing to address the appropriate factors to determine Wife's entitlement to attorney's fees and the reasonableness of the award.

We need not reach Husband's argument on this issue. Given our disposition on the child support and equitable division issues, the family court should reconsider Wife's request for attorney's fees on remand. *See Sexton v. Sexton,* 310 S.C. 501, 503–04, 427 S.E.2d 665, 666 (1993) (reversing and remanding issue of attorney's fees for reconsideration when

---

3. The parties failed to include any documentation in the record to demonstrate how much they paid on their first mortgage, which would reduce their indebtedness and necessarily affect the amount of equity in the home. Accordingly, we resort to the figures cited by the family court in its final order.

4. Formerly S.C.Code Ann. § 20–7–472 (Supp.2007).

the substantive results achieved by trial counsel were reversed on appeal).

## CONCLUSION

Based on the foregoing, the family court's order is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

PIEPER and KONDUROS, JJ., concur.