24295

Rosemary MURPHY, Respondent v. James Lee MURPHY, James Berl, Guardian ad Litem for Tyler Lee Murphy and Alexandra Russell Murphy, minor children, Defendants, Of whom James Lee Murphy is Appellant.

(461 S.E. (2d) 39)

Supreme Court

324]

*C. Rauch Wise*, of *Wise & Tunstall*, Greenwood, *for appellant*.

*Peter Fuge*, of *Harvey & Battey, P.A.*, Beaufort, *for respondent.*

Heard May 31, 1995.

Decided Aug. 7, 1995; Reh. Den. Sept. 6, 1995.

BURNETT, Judge:

In this domestic litigation, the family court judge (1) determined that Appellant's entire pension fund constituted marital property; (2) determined that Appellant's investment account, as well as the income produced from it, constituted marital property, and divided the account equally between the parties; (3) ordered sequestration of the investment account; and (4) denied Appellant's motion for recusal. We affirm.

## FACTS

Rosemary and James Murphy were married in November of 1968. They have two children. Mr. Murphy was employed as a corporate attorney with the Martin-Marietta Corporation from June 1963 until he retired in May 1986. After Mr. Murphy's retirement, the family moved from Cleveland, Ohio, to Hilton Head, South Carolina. At that time, the family income consisted of Mr. Murphy's retirement benefits from Martin-Marietta (pension fund) and interest income from investments with A.G. Edwards & Sons, Inc. (investment account). During

the marriage, Mrs. Murphy was primarily a homemaker; however, she was employed as a secretary during the period of separation. Prior to the final hearing in this matter, Mr. Murphy was admitted to practice law in South Carolina.

The parties separated in 1990. In a Temporary Order dated February 8, 1991, Mrs. Murphy was awarded possession of the marital home and custody of the children, and Mr. Murphy was ordered to pay monthly mortgage payments and child support. Both parties were enjoined from disposing, altering, or encumbering any marital assets, except as necessary for payment of private school tuition for the children. Mr. Murphy subsequently withdrew $4,670 from the investment account for the children's tuition, and the parties consented to using $575 from the investment account for repairs to the marital home.

When Mr. Murphy failed to make monthly mortgage payments after April 1991, the marital home went into foreclosure. The home sold prior to the final hearing on the merits leaving Mrs. Murphy and the children without housing or funds to procure such. Accordingly, Mrs. Murphy requested and was granted $2,500 for relocation expenses and $1,000 for temporary support. In addition, the family court ordered Mr. Murphy's final equitable distribution to be reduced by the difference between the actual payoff on the mortgages and what the payoff would have been if Mr. Murphy had timely paid the mortgage payments—the difference amounted to $12,796.48.

On the day before the final hearing, Mr. Murphy served and filed a motion requesting the family court judge to recuse himself contending that counsel for Mrs. Murphy had represented the judge on a previous legal matter. The motion was denied after a hearing.

In the final divorce decree, the judge determined that although Mr. Murphy had been enjoined from disposing, altring, or encumbering the investment account, he had withdrawn $47,915.68 and disposed of 2,711 shares of stock. Accordingly, he was ordered to provide a complete accounting of the investment account, and a sequestrator was appointed pursuant to S.C. Code Ann. § 20-7-475 (Supp. 1994) to equitably distribute the marital assets and to otherwise carry out the terms of the decree.

## ISSUES

I. Was it error to consider the entire pension fund as marital property?

II. Did the judge abuse his discretion by dividing the investment account equally between the parties and holding that the profit produced from it was marital property?

III. Did the judge err by appointing a sequestrator *sua sponte*?

IV. Did the judge err by not recusing himself?

### I. *Pension Fund*

Mr. Murphy contends the portion of the pension fund attributable to the period of time that he was employed prior to marriage is nonmarital property[1] and, therefore, the judge erred in considering the entire pension fund to be marital property. We disagree.

Vested retirement funds are considered marital property under the Equitable Apportionment of Marital Property Act;[2] however, the portion of a pension attributable to the period of time that a spouse is employed before the marriage is nonmarital property. *Noll v. Noll*, 297 S.C. 190, 375 S.E. (2d) 338 (1988). Nevertheless, property which is nonmarital may be transmuted into marital property during the marriage if it is utilized by the parties in support of the marriage or in some other manner which shows an intent by the parties to make it marital property. *Strickland v. Strickland*, 297 S.C. 248, 376 S.E. (2d) 268 (1989), *McDowell v. McDowell*, 300 S.C. 96, 386 S.E. (2d) 468 (Ct. App. 1989).

Here, the record establishes that at no time prior to this appeal did Mr. Murphy claim any portion of the pension fund to be nonmarital. In fact, after Mr. Murphy's retirement, the parties mutually agreed upon a "game plan" whereby the nonmarital portion of the pension fund was commingled with the portion earned subsequent to marriage, and the *entire* pension fund was used to support the marriage.

---

[1] According to testimony by an expert witness, the total value of the pension was $228,775, of which 23.91 percent was earned prior to marriage. Therefore, the expert assessed the prorated value of the pension, reflecting the portion coinciding with the marriage, to equal $174,300.

[2] S.C. Code Ann. §§ 50-7-471 to -479 (Supp. 1994).

Furthermore, Mrs. Murphy waived her right to survivor's benefits in the whole pension fund so that the parties could receive accelerated retirement payments during the marriage.

Under these circumstances, we conclude that the nonmarital portion of the pension fund was transmuted into marital assets when the parties utilized the entire pension fund in support of the marriage. Accordingly, the judge properly considered both portions to be marital property.

## II. *Investment Account*

The judge determined that the investment account was marital property subject to equitable distribution and that Mrs. Murphy was entitled to fifty percent of its value. The judge calculated the value of the investment account to equal $134,792.92—its fair market value at the time of filing ($121,975.98) plus income produced in the form of dividends ($12,816.94). Mr. Murphy contends that the judge should have reduced Mrs. Murphy's entitlement to reflect the distributions[3] awarded prior to the final hearing and that the dividends should not have been held to be marital property. We disagree.

Family court judges have wide discretion in determining how marital property is to be distributed. They may use any reasonable means to divide the property equitably, and their judgment will not be disturbed absent an abuse of discretion. *Peirson v. Calhoun*, 308 S.C. 246, 417 S.E. (2d) 604 (Ct. App. 1992).

Although the family court enjoined both parties from interfering with marital assets, the record establishes that Mr. Murphy inappropriately considered the investment account and the dividends generated from it to be *personal* assets rather than marital assets. For instance, Mr. Murphy listed the dividend income as his income on the financial declaration for consideration by the judge when determining his temporary child support payments. Moreover, between the commencement of litigation and the final hearing, Mr.

---

[3]The family court authorized distributions from the investment account for the children's school tuition in the amount of $4,670, for repairs to the marital home in the amount of $545, for relocation expenses and temporary support of Mrs. Murphy and the children in the amount of $3,500, and for Mr. Murphy's living expenses and attorney's fees in the amount of $10,000.

Murphy sold 2,711 shares of stock and withdrew approximately $47,915 from the investment account. He replaced approximately $8,030. As a result of this conduct, Mr. Murphy received a net distribution of approximately $39,885, and the investment account incurred considerable losses.

On these facts, we conclude that it was not an abuse of discretion for the judge to disregard the distributions when determining Mrs. Murphy's entitlement to the investment account. In addition, we find that the judge appropriately considered the income produced from the investment account as marital property. Accordingly, we hold that the judge acted reasonably and equitably when dividing the investment account equally between the parties.

### III. *Appointment of a Sequestrator*

After concluding that Mr. Murphy had not provided a proper accounting of the investment account and that substantial funds and stocks had been depleted from it, the judge ordered sequestration of the investment account. Mr. Murphy contends that the judge erred in appointing a sequestrator *sua sponte* because sequestration of the investment account was not necessary and neither party petitioned for it. We disagree.

When apportioning marital assets, the language in S.C. Code Ann. § 20-7-476 (Supp. 1994) provides the court with broad discretion by allowing it to use "any other reasonable means to achieve equity between the parties." Therefore, when considering Mr. Murphy's conduct regarding the investment account, we hold that the judge had inherent power to appoint a sequestrator *sua sponte* to protect the interests of the parties. *See* 79A C.J.S. *Sequestration* § 13 (1995) (judicial sequestration may be ordered *ex proprio motu* in exceptional cases); 70 Am. Jur. (2d) *Sequestration* § 33 (1987) (in exceptional circumstances courts of equity have inherent power to issue writs of sequestration to preserve property pending hearing and to enforce compliance with orders).

### IV. *Recusal*

Mr. Murphy next contends that the presiding judge should have recused himself in this matter because he was represented by counsel for Mrs. Murphy in a prior legal matter. We disagree.

A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. Cannon 3(C)(1) of the Code of Judicial Conduct, Rule 501, SCACR. If there is no evidence of judicial prejudice, a judge's failure to disqualify himself will be affirmed. *Ellis v. Procter & Gamble Dist. Co.*, — S.C. —, 433 S.E. (2d) 856 (1993).

The record contains substantial evidence supporting the judge's factual findings. Furthermore, our search of the record reflects no judicial bias or prejudice. We therefore conclude that Mr. Murphy has not established error in the judge's denial of the motion for recusal.

Accordingly, the judgment below is

Affirmed.

FINNEY, C.J., and TOAL, MOORE and WALLER, JJ., concur.