536 S.E.2d 684

**Debra J. FIELDS, Appellant,**

v.

**Richard H. FIELDS, Respondent.**

**No. 3230.**

Court of Appeals of South Carolina.

Submitted June 5, 2000.
Filed July 6, 2000.
Refiled July 21, 2000.

---

17. *Id.* at 249, 325 S.E.2d at 577 (citations omitted).

Kenneth M. Matthews, of Columbia, for appellant.

James T. McLaren and C. Dixon Lee, III, both of McLaren & Lee, of Columbia, for respondent.

SHULER, Judge:

Subsequent to their divorce, the family court equitably distributed the marital property of Debra and Richard Fields. Debra Fields appeals the court's valuation of two family corporations and the exclusion from the marital estate of certain corporate distributions to Richard Fields. We affirm.[1]

## FACTS/PROCEDURAL HISTORY

Debra J. Fields (Wife) and Richard H. Fields (Husband) were married in 1985 and separated in 1996. On January 31, 1997 Wife filed for divorce. The family court entered a pendente lite consent order at the time, and the parties later agreed to sever their divorce from other marital issues. On December 12, 1997, the family court granted Husband and Wife a divorce on the ground of one year's continuous separation. Thereafter, on February 10, 1998, the court issued an order approving the parties' "Custody and Visitation Agreement" pertaining to their three minor children.

The following day, Husband and Wife attempted to resolve outstanding financial matters in an in-court settlement agreement. An integral provision in the agreement stipulated that Wife's father, along with a business partner, would personally guarantee Wife's purchase of Husband's ownership interest in three family corporations. On March 16 the family court approved the agreement, but vacated its order three days later when Wife's father refused to sign the note necessary for Wife to purchase Husband's stock shares. As a result, on

---

1. We decide this case without oral argument pursuant to Rules 215 and 220(b)(2), SCACR.

May 18 the court held a hearing concerning the parties' finances.

The principal dispute before the family court involved the equitable distribution of stock in three business interests informally known as Dove, Sparrow, and LFI. The stock in each business, all sub-chapter S corporations, was held in the name of Husband. Consequently, Husband owned 18% of Dove (18 shares), 40% of Sparrow (20,000 shares) and 3% of LFI (20 shares).[2] For most of the parties' marriage Dove, the corporate parent of several temporary labor franchises, employed Husband as a vice president. Pursuant to a management agreement, Dove in turn controlled Sparrow's operations. During the marital litigation, however, on October 31, 1997 Dove fired Husband. Subsequently, Wife's father, Dove's CEO and only shareholder besides Husband, ousted Husband from the corporation's board of directors.

After several interim orders, the family court issued a final order on November 12, 1998. In fashioning an equitable distribution, the court awarded 53% of the marital assets to Husband, who by prior consent obtained sole custody of the parties' minor children. Regarding the disputed corporate assets, the court awarded Husband the shares in Sparrow (valued at $328,000) and LFI (valued at $100,000), while Wife received the 18% interest in Dove (valued at $415,710). Wife filed a timely motion to reconsider and argued, inter alia, that the family court erred in its valuations of the Dove and Sparrow stock and in failing to include certain corporate distributions in the marital estate. Following a hearing and arguments from counsel, the court denied the motion. This appeal followed.

## LAW/ANALYSIS

### Standard of Review

■ In appeals from the family court, this Court retains jurisdiction to find facts in accordance with our own view of a

---

2. The remaining shareholders of these corporations are as follows:
   Dove—Wife's father (82%)
   Sparrow—Wife's father (40%); Richard Vondrak (9%); Newton Burnette (9%); Byron Walker (2%)
   LFI—$100,000 value placed on Husband's 3% interest is undisputed.

preponderance of the evidence. *Woodall v. Woodall,* 322 S.C. 7, 471 S.E.2d 154 (1996); *Owens v. Owens,* 320 S.C. 543, 466 S.E.2d 373 (Ct.App.1996). This broad scope of review, however, does not require us to disregard the findings of the court below. *Stevenson v. Stevenson,* 276 S.C. 475, 279 S.E.2d 616 (1981); *Charest v. Charest,* 329 S.C. 511, 495 S.E.2d 784 (Ct.App.1997). Nor does it relieve an appellant of the burden of convincing this Court that the family court erred. *Skinner v. King,* 272 S.C. 520, 252 S.E.2d 891 (1979).

■ The family court has wide discretion in determining how marital property is to be distributed. *Murphy v. Murphy,* 319 S.C. 324, 461 S.E.2d 39 (1995). In so doing, it "may use any reasonable means to divide the property equitably...." *Id.* at 329, 461 S.E.2d at 41–42. Accordingly, the court's apportionment of marital property will not be disturbed absent an abuse of discretion. *Id.; Dixon v. Dixon,* 334 S.C. 222, 512 S.E.2d 539 (Ct.App.1999).

### I. Date of Stock Valuation

■ Wife first argues the family court erred in valuing the Dove and Sparrow stock as of December 31, 1997 rather than January 31, 1997, the date she filed her initial complaint for divorce. This issue is without merit.

■ In general, marital property subject to equitable distribution is valued as of the date marital litigation is filed or commenced. *See McElveen v. McElveen,* 332 S.C. 583, 506 S.E.2d 1 (Ct.App.1998); *Mallett v. Mallett,* 323 S.C. 141, 473 S.E.2d 804 (Ct.App.1996). It is equally true, however, that the parties may be entitled to share in any appreciation or depreciation in marital assets occurring after separation but before divorce. *See McDavid v. McDavid,* 333 S.C. 490, 497 n. 7, 511 S.E.2d 365, 369 n. 7 (1999) (approving *Smith v. Smith,* 294 S.C. 194, 203, 363 S.E.2d 404, 409 (Ct.App.1987) ("We know of no authority, and the husband does not cite any, that holds that only one spouse is entitled to any appreciation in marital assets that occurs after the parties separate and before the parties are divorced. We would think both parties would be entitled to any such appreciation.")); *Dixon v. Dixon,* 334 S.C. 222, 228, 512 S.E.2d 539, 542 (Ct.App.1999) ("It is an unfortunate reality that, given the volume of cases

handled by our family courts, there often is a substantial delay between the commencement of an action and its ultimate resolution. Thus, it is not unusual for the value of marital assets to change, sometimes substantially, between the time the action was commenced and its final resolution. In such a case, the family court has the ability to consider the post-filing appreciation or depreciation when valuing and apportioning the marital estate."); *Mallett,* 323 S.C. at 141, 473 S.E.2d at 804 (affirming valuation of husband's business at time of final hearing where business had declined in value by more than $30,000 since commencement of the action).

The family court valued the Dove and Sparrow stock as of December 31, 1997, the closest date to the parties' December 12, 1997 divorce for which corporate information was available. Because both stocks increased in value from December 1996 to December 1997, the family court was well within its discretion in deciding to value them on the later date. *See id.*

## II. Valuation of Dove Stock

■ Wife next argues the family court erred in valuing the Dove stock. We disagree.

The family court has broad discretion in valuing marital property such that this Court will affirm when the findings below are supported by the evidence. *See Smith v. Smith,* 327 S.C. 448, 486 S.E.2d 516 (Ct.App.1997) (an appellate court will affirm the family court's valuation of marital property if it is within the range of the evidence presented); *Morehouse v. Morehouse,* 317 S.C. 222, 452 S.E.2d 632 (Ct.App.1994) (same). Here, the family court divided the two stocks in question, awarding the Dove stock to Wife because it would give her "an asset valued at $415,710.00 and a ready market for sale to her father," the only other Dove shareholder. The court then awarded Husband the stock in Sparrow (valued at $328,000) and LFI (whose $100,000 value was not disputed) to effect an equitable distribution. The record evidence clearly supports these values.

At trial, Husband and Wife both presented expert testimony on the value of each stock.[3] During his direct examination

3. Wife's expert, Richard Vondrak, was a 9% shareholder in Sparrow at the time of trial. Although an experienced businessman, Vondrak had

Wife's expert, Richard Vondrak, submitted four valuation methods for the court's consideration: 1) adjusted book value; 2) "like-kind" sale; 3) profit analysis; and 4) IRS system. When asked specifically which method should be employed given the facts of the case, Vondrak replied: "That's almost impossible to answer.... I'm not clairvoyant to tell you which of all these systems would—all fraught with weaknesses, you know." Vondrak further declared that much of choosing a valuation approach "is through judgment and common sense." On cross-examination, however, Vondrak admitted it was important to consider the effect of minority shareholder status in valuing stock, offering the following as an example:

> When I start a company, I issue myself [ ] fifty-one percent (51%) of the shares. The other forty-nine percent (49%) of the shares, as far as I am concerned, are valueless, because I determine whether they get a dividend or not. I have complete control—

In contrast, Husband's expert Dennis Dabney emphatically stated that the appropriate method of valuation depended on who was holding the stock: "The value will vary ... depending on who holds [each] stock, and their relative position to the other shareholders in the corporation." In essence, noted Dabney, the value for a stock accompanied by corporate control is "much, much more" than the value of the stock when its holder is in the minority. Dabney then explained that a "minority discount" usually is applied to offset the lack of corporate control:

> If I'm valuing a thirty percent (30%) [interest] in a corporation, I want to know who the shareholders are and how they're aligned. And if they're not aligned, and they're all representing their own independent interest[s], then that thirty percent (30%) interest in that corporation is not worth thirty percent (30%) of the whole. It's worth thirty percent of the whole times some minority discount for lack of control ... [or] direction of the corporation.

---

no experience testifying in court as a business evaluator. On the other hand Husband's expert, Dennis Dabney, was a CPA and certified valuation analyst with extensive experience valuing closely-held corporations, often at the behest of the family court.

As a result, Dabney testified the Dove stock would be worth more in Wife's hands than Husband's because Wife could consolidate the 18% interest in Dove with her father's 82% interest to achieve total family control of the corporation. Accordingly, in Wife's hands, Dabney assigned a value to Dove of $415,710.[4]

Dabney further concluded Wife should receive the Dove stock because her father, as controlling shareholder, could financially penalize Husband in a tax squeeze-out if the stock were awarded to him.[5] In fact, the family court found that Wife's father had subjected Husband to such a maneuver during the course of the instant litigation in an attempt to gain control and complete ownership of the companies in dispute. By again "squeezing" Husband in this manner, Wife's father eventually could force Husband to sell his minority interest for less than fair market value. Indeed, Wife's expert, Vondrak, testified he does it "all the time to depress my partner's stock so I can buy it cheaper." Finally, even Vondrak assumed Husband "would be an adversarial eighteen percent (18%) holder for the rest of the term—for the rest of the life of the company."

Wife claims the family court erred in accepting Dabney's "speculative" opinions regarding the Dove stock because there was no way to tell what her father would do in the future. The record, however, clearly demonstrates several attempts by Wife's father to financially penalize Husband, including firing him from his job, removing him as a director of Dove, and giving himself the right of first refusal on any transfer of

---

4. The parties do not dispute the underlying financial data used to assess the value of the stocks in question; Dabney, in fact, based his evaluation of each stock on individual share prices assigned by Vondrak.

5. As a "sub-chapter S" corporation, Dove's profits "pass through" to individual shareholders as taxable income in amounts equal to their respective percentages of ownership. However, these "paper" profits, which the shareholders must report as personal income, are not necessarily accompanied by corresponding cash payouts from the corporation. Since the decision to distribute profits rests solely with the directors, a corporate board can refuse to authorize monetary distributions to effectuate a "tax squeeze-out." When this happens, the shareholder remains personally liable for the applicable income tax, which he must then pay out of pocket.

Dove stock.[6]   Moreover, the $415,710 value assigned to the Dove stock by Dabney is identical to the value arrived at by Vondrak using the "Like Kind Sales" method ($23,195 per share × 18 shares = $415,710).   Nonetheless, Wife asserts the court erred in employing Dabney's valuation of Dove over that offered by Vondrak.   The family court, of course, is free to choose between competing valuations. *See Smith v. Smith,* 327 S.C. 448, 486 S.E.2d 516 (Ct.App.1997) (citing *Smith v. Smith,* 294 S.C. 194, 198, 363 S.E.2d 404, 406–07 (Ct.App.1987) ("In valuing marital assets, the trial court is fully within its discretion to choose the valuations of one party over those of the other party.") (internal citation omitted)).

In reaching its decision, the family court engaged in a detailed examination and thorough analysis of minority owner-ship as it relates to the control and marketability of corporate stock.   Both its finding that the Dove stock would be worth more in Wife's hands and its conclusion that it should be awarded to Wife are well supported by the record evidence. We therefore find no abuse of discretion in the family court's distribution of this asset.[7]

---

6.   As this Court previously has noted, "[u]nfair treatment of holders of minority interests in family companies and other closely held corpora-tions by persons in control of those corporations is so widespread that it is a national business scandal." *Davis v. Hamm,* 300 S.C. 284, 293 n. 6, 387 S.E.2d 676, 681 n. 6 (Ct.App.1989) (citations omitted).

7.   Wife further asserts the family court could have avoided the valuation question entirely by distributing the Dove stock "in kind."   Although in-kind apportionment is often favored, it is not mandatory.   To the contrary, in-kind distribution is unwarranted where, as here, the nature of the parties' relationship to the asset would make it inequitable. *See Ducate v. Ducate,* 279 S.C. 246, 247, 306 S.E.2d 218, 219 (1983) (finding an abuse of discretion and reversing where court awarded wife four percent of husband's stock in closely-held family corporation in divorce proceedings because it "would only allow the dissension and bitterness between the parties to spread to the corporation and would only give wife something of questionable value"); *Hough v. Hough,* 312 S.C. 344, 440 S.E.2d 387 (Ct.App.1994) (under circumstances where the marital home was situated across the street from the husband's parents' home and the husband solely operated the family business, court found no abuse of discretion in the family court's decision not to effectuate an "in kind" distribution of the major marital assets); *see also Johnson v. Johnson,* 285 S.C. 308, 311, 329 S.E.2d 443, 445 (Ct.App.1985) ("The family court's objective should be to dissolve the

## III. Exclusion of Corporate Distributions from Marital Estate

Finally, Wife contends the family court erred in failing to include as marital assets corporate distributions to Husband from LFI and Sparrow during the course of the marital litigation. To the contrary, our review of the final order reveals the court in fact identified and included these distributions in the equitable apportionment of the marital estate. Indeed, the order below specifically addressed the issue:

[Wife] claims that certain distributions from the corporations during these proceedings should be taken into account in the equitable division. *The Court has taken those distributions into account as they were in the nature of income which [is] offset by payment of taxes and other obligations, all of which have been considered by the Court.*

Accordingly, this issue is without merit.

**AFFIRMED.**[8]

CURETON and GOOLSBY, JJ., concur.

marriage, sever all entangling legal relations and place the parties in a position from which they can begin anew.").

8. Although Wife includes an allegation of error in the court's allocation of marital assets in her statement of issues on appeal, she fails to argue the issue in the body of the brief and it is therefore deemed abandoned. *See, e.g., First Savings Bank v. McLean,* 314 S.C. 361, 444 S.E.2d 513 (1994) (issues not argued in the brief are deemed abandoned and will not be considered on appeal).