THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Alice Dawkins, Respondent,
 v.
 Steve Dawkins, Appellant.
 
 
 

Appeal from Cherokee County
Georgia V. Anderson, Family Court Judge
Unpublished Opinion No. 2007-UP-460
Submitted October 1, 2007  Filed October 11, 2007

AFFIRMED IN PART; REVERSED IN PART; REMANDED

 
 
 
 Richard H. Rhodes, of Spartanburg, for
 Appellant.
 William G. Rhoden and Usha J. Bridges,
 of Gaffney, for Respondent.
 
 
 

PER
 CURIAM:  In this domestic action,
 Steve Dawkins (Husband) appeals the family courts (1) apportionment of marital
 property, (2) failure to provide Husband a special equity in the workers compensation
 award and the marital home, (3) failure to award Dawkins Automotive to Husband in
 the division of marital assets, and (4) award of attorneys fees.  We affirm in
 part, reverse in part, and remand.[1]
FACTS
The
 parties in this divorce action were married in June 1980, and separated on
 August 14, 2002.  During their twenty-two year marriage, Husband and Alice
 Dawkins (Wife) acquired numerous rental properties and a business, Dawkins
 Automotive.  Husband suffered an on-the-job injury in 1995 while employed with
 John Montgomery Development and collected a $78,000.00 workers compensation award. 
 He invested a substantial amount of those benefits in Dawkins Automotive.
Wife
 filed this divorce action on September 10, 2002.  In her complaint, Wife prayed
 for use of the marital home and the right to operate the family business
 (Dawkins Automotive).  An emergency hearing addressing these concernments was
 scheduled for October 10, 2002.  Husband filed an affidavit seeking to operate
 the business and to gain access to the business records in Wifes possession.
A
 temporary order was entered on November 1, 2002, giving Wife control of the business
 and directing her to account each week for business income and expenses.  The
 order provided:  (1) Husband would make repairs on vehicles for the business,
 and return them to Wife, who would sell them for Dawkins Automotive; (2) Wife would
 furnish the tools and parts for Husbands repair of the vehicles; (3) Husband
 and Wife would agree upon a Certified Public Accountant (CPA) who would conduct
 an audit, determine the money received, the automobiles sold, the expenses paid,
 and the money disbursed; (4) Wonketia Dawkins (the parties daughter) would
 manage and collect rent from the parties mutually owned rental properties and make
 a monthly accounting; (5) Husband and Wife would make an accounting of rent collected
 by either party prior to the order date; and (6) either party could petition
 for relief from the terms of the order.
On
 November 14, 2002, Husband filed an Answer and Counterclaim to Wifes initial
 Complaint requesting control over Dawkins Automotive and the business records
 in Wifes possession.  At a follow-up hearing held December 3, 2002, Husband
 contended Wife failed to provide business records and was uncooperative with
 the repair and sale of vehicles for Dawkins Automotive.  
An
 order dated January 8, 2003, was issued:  (1) compelling the parties to present
 receipts and expenses related to the rental properties, received since the date
 of separation; (2) prohibiting the parties from accepting any rent or making
 any payments on behalf of the rental properties; (3) requiring Wonketia Dawkins
 to provide rental reports for November and December of 2002, as well as every
 month thereafter, showing all rent received and all expenses paid; (4)
 instructing the parties to produce a complete accounting of income and expenses
 related to the sale of used cars, both personally and for Dawkins Automotive; (5)
 commanding Husband to provide a written document on each car to be repaired to
 Wife, listing the needed parts, where they can be purchased, and their approximate
 cost; (6) dictating that Wife review the car repair documents with Husband and
 either provide him with the parts or the funds to obtain the parts; (7)
 directing the parties to give an inventory of all equipment in their respective
 possessions; and (8) stating when either party receives the income tax refund
 for 2001, provide it immediately to their attorney.
In
 January of 2004, Husband filed a motion requesting the information previously
 ordered by the court on January 8, 2003, and a hearing was held on January 29,
 2004.  On February 10, 2004, a temporary order was issued expressing the family
 courts dissatisfaction with the extent of compliance with the prior order.  It
 directed the parties to comply by providing:  

 Each
 asset must be reviewed separately as to income and expenses to properly
 account.  Beginning August 18, 2002, both parties must therefore provide the
 Court and the other party an accounting of each asset (by the name of the
 asset) on which either has received income and all incurred expenses, supported
 by receipts and cancelled checks.  This includes automobiles and real estate. 
 Either party can then see what the other contends about a particular asset and
 the Court can determine whether there has been a net gain or a net loss on any
 particular asset.
 Wonketia
 Dawkins must provide by location of each rental property, an accounting of all
 rent received and all expenses paid beginning November 1, 2002.  Again this
 will allow the parties and the Court to view each asset separately and make a
 determination of net gain or net loss.
 Both
 Plaintiff and Defendant must provide the other and this Court a list of all
 vehicles in his/her possession on August 18, 2002 as well as any vehicles
 acquired or sold subsequent to that date to include name of vehicles, to whom
 sold, purchase price, sales price, expenses to repair and monthly payments, if
 any.
 All of
 the aforesaid must be provided by the parties to their respective attorneys
 within 10 days.  In addition Wonketia Dawkins is hereby named as a party
 defendant and she is to be served with a copy of this Order and required to
 comply with the accounting within 10 days after service.

After
 Husband sought a Rule to Show Cause alleging Wife was not producing rental
 information or other court ordered documents, Wife presented a voluminous box
 of documents at a hearing on May 4, 2004.  From the hearing, a temporary order
 was entered on June 14, 2004, continuing the hearing and stating that it
 appeared Wife and Wonketia Dawkins complied with the prior order, and the
 matter may be rescheduled if necessary.
On
 October 5, 2005, the court held a status conference where it required Wife to
 present within thirty days:  (1) index cards of paid out accounts for car sales;
 (2) monthly reports filed with the South Carolina Tax Commission beginning with
 September 2002; (3) a list of automobiles sold and their respective buyers for
 the years of 2004 and 2005; (4) income and expense information on the rental
 properties for 2004 and 2005; and (5) a composition book of Husbands recorded
 car sales, if available.  In addition, the court instructed Husband to provide an
 accounting of the following within thirty days:  (1) maintenance proceeds; (2) rents
 received from two of the rental properties; and (3) all car sales.
As a
 result of Wifes non-production of the documents outlined in the status conference,
 Husband filed a petition requesting a Rule to Show Cause and the hearing was
 held on December 15, 2005.  At the hearing, Wife presented a plethora of
 documents purported to contain the information requested.  Under the assumption
 the CPA would be able to find the necessary data to construct his report, the
 hearing was continued by an order dated December 28, 2005.
On
 December 19, 2005, Husband filed a Rule to Show Cause alleging Wife had not
 complied with the prior orders of the court.  This petition was scheduled to be
 heard at the final hearing on January 11, 2006.  A divorce decree was entered
 on March 19, 2006, providing in relevant parts:

 R.   Distribution List Follows.
 The
 marital properties and debts shall be divided pursuant to the list attached
 hereto.  While the Plaintiff is to receive more than the Defendant, the
 Plaintiff is taking responsibility for all the marital debt which is secured by
 the properties that she is receiving.  The Court has considered the relative
 fault in the breakup of the marriage as well as the Plaintiffs earnest and
 commendable efforts in maintaining the parties [sic] properties and good credit
 during the pendency of this action.  Assets received by the Defendant are debt
 free.  Further, the Plaintiff needs the assets that she will be receiving to
 support herself in the future.  Both parties should cooperate in the signing of
 any documents necessary to comply with the terms of this Order.
 10.  The
 Court finds that in regard to attorney [sic] fees both parties have contributed
 to the prolonged contentiousness of this case.  However, the most significant
 act, or failure to act was that of the Plaintiff in not timely producing the
 September 2002 accounts receivable list with the supporting documentation.  The
 Court finds that had this been done in a timely manner, this case may have very
 well have been less expensive and been ready for trial earlier.  The Court
 considers this factor in the request for attorneys fees rather than as a
 separate contempt issue.  The Plaintiff shall contribute $7,500.00 toward the
 Defendants attorneys fees within six months of the date of this Order paying
 this directly to Mr. Thompson.  In consideration of his fault in the break up
 of the marriage, [t]he Defendant shall contribute $3,000.00 toward the
 Plaintiffs attorneys fees within six months of the date of this Order paying
 this amount directly to Mrs. Bridges.  The remaining legal expenses shall be paid
 the party incurring them.

Husband
 filed a Motion for Reconsideration pursuant to Rule 59(e), SCRCP.  On May 18,
 2006, an amended divorce decree was entered which modified the original order,
 in relevant part:  

 Page 11,
 R.  Distribution List Follows.  The following paragraph should be substituted.
 The
 marital properties and debts shall be divided pursuant to the amended and
 modified asset distribution list attached hereto, wherein the Plaintiff will be
 receiving 60% of the marital assets, and the Defendant 40%.  The Court has
 considered the relative fault in the breakup of the marriage, as well as
 Plaintiffs earnest and commendable efforts in maintaining the parties [sic] assets
 and good credit during the pendency of this action.  Consideration has also
 been given to the fact that Defendants real estate assets are all debt free,
 while Plaintiff takes with hers a debt obligation of $140,937.  The only real
 estate taken by Plaintiff lien free is the property occupied by the parties
 daughter, and for which neither party required the payment of rent prior to
 their separation.
 Additionally,
 Plaintiff will have the right to operate the business known as Dawkins Auto
 free of any claims by the Defendant.  To accomplish a final distribution, the
 Plaintiff owes the Defendant $21,422.00, which is to be paid in full by July 1,
 2007.
 The
 remaining requests by the Defendant to Alter and/or Amend are hereby denied,
 and the March 19, 2006 order remains in full force and effect, except as herein
 as modified.

ISSUES

 
 
 1. 
 Did the family court err in
 apportioning the marital property in a sixty/forty division, granting Wife sixty
 percent of the marital estate?
 
 
 
 2. 
 Did the family court err in denying
 Husband a special equity in the workers compensation award and the marital
 home?
 
 
 
 3.  
 Did the family court err by
 allocating Dawkins Automotive to Wife when dividing the marital assets?
 
 
 
 4.
 Did the family court err by
 instructing Husband to pay Wife $3,000 toward her attorneys fee while only
 awarding Husband $7,500 from Wife for his attorneys fee?
 
 

STANDARD OF REVIEW
In
 appeals from the family court, this court may find facts in accordance with its
 own view of the preponderance of the evidence.  Nasser-Moghaddassi v.
 Moghaddassi, 364 S.C. 182, 189, 612 S.E.2d 707, 711 (Ct. App. 2005) (citing Emery v. Smith, 361 S.C. 207, 213, 603 S.E.2d 598, 601 (Ct. App.
 2004)).  However, this broad scope of review does not require this court to
 disregard the family courts findings.  Lacke v. Lacke, 362 S.C. 302,
 307, 608 S.E.2d 147, 149 (Ct. App. 2005) (citing Bowers v. Bowers, 349
 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct. App. 2002)); Badeaux v. Davis, 337
 S.C. 195, 202, 522 S.E.2d 835, 838 (Ct. App. 1999).  Nor must we ignore the
 fact that the family court judge, who saw and heard the witnesses, was in a
 better position to evaluate their credibility and assign comparative weight to
 their testimony.  Scott v. Scott, 354 S.C. 118, 124, 579 S.E.2d 620, 623
 (2003) (citing Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 157
 (1996)).  However, our broad scope of review does not relieve the appellant of
 the burden of convincing this court the family court committed error.  Nasser-Moghaddassi,
 364 S.C. at 190, 612 S.E. 2d at 711 (citing Skinner v. King, 272 S.C.
 520, 522-23, 252 S.E.2d 891, 892 (1979)).
DISCUSSION
1.  Equitable Division of
 Marital Property
Husband
 asserts the family court erred when apportioning the marital estate in a sixty/forty
 split in favor of Wife.  We agree.  The appropriate division of property is a fifty/fifty
 partition to each spouse.
The
 apportionment of marital property is within the discretion of the family court
 judge and will not be disturbed absent an abuse of discretion.  See Morris
 v. Morris, 295 S.C. 37, 39, 367 S.E.2d 24, 25 (1988).  Section 20-7-472 of
 the South Carolina Code (Supp. 2006) provides fifteen factors the family court
 must consider, giving each weight as it determines.  These factors are:  (1) the
 duration of the marriage, (2) any marital misconduct or fault and its effect on
 the break-up of the marriage, (3) the value of marital property and the
 contribution of each spouse in the acquisition, preservation, depreciation, or
 appreciation, including the contribution of a homemaker, (4) the income and
 earning potential of each spouse and opportunity for future acquisition of
 assets, (5) the health, both physical and emotional, of each spouse, (6) the need
 of either spouse for additional training or education, (7) the nonmarital
 property of each spouse, (8) the existence or nonexistence of vested retirement
 benefits for each spouse, (9) whether alimony has been awarded, (10) the desirability
 of awarding the family home, (11) the tax consequence to each spouse as a
 result of the apportionment, (12) the existence and extent of any support
 obligations of either party, (13) any liens and encumbrances on marital and
 separate property and other existing debts, (14) any child custody arrangements
 and obligations, and (15) any other relevant factors as the trial court shall
 expressly enumerate in its order.  S.C. Code Ann. § 20-7-472 (Supp. 2006).
On
 review, this Court looks to the fairness of the overall apportionment, and if
 the end result is equitable, the fact that this court might have weighed
 specific factors differently than the family court is irrelevant.  Johnson
 v. Johnson, 296 S.C. 289, 300-01, 372 S.E.2d 107, 113 (Ct. App. 1988); see Doe v. Doe, 324 S.C. 492, 502, 478 S.E.2d 854, 859 (Ct. App. 1996) (The
 reviewing court will affirm the family court judges apportionment of marital
 property if it can be determined that the judge addressed the relevant factors
 under section 20-7-472 with sufficiency for the reviewing court to conclude the
 judge was cognizant of the statutory factors.).
The
 court may acknowledge the grounds for divorce when apportioning the marital estate. 
 S.C. Code Ann. § 20-7-472(2) (Supp. 2006).  However, a severe penalty for fault
 is prohibited:  Although fault does not justify a severe penalty in making a
 division of marital property, it is a factor the court may consider in
 determining the equities between spouses. Rampey v. Rampey, 286 S.C.
 153, 156, 332 S.E.2d 213, 214 (Ct. App. 1985); Simmons v. Simmons, 275
 S.C. 41, 44-45, 267 S.E.2d 427, 429 (1980).
While
 there is no bright line rule, this Court suggests an equal fifty/fifty split of
 marital assets as an appropriate beginning point for dividing the estate of a
 long-term marriage.  Craig v. Craig, 358 S.C. 548, 557, 595
 S.E.2d 837, 842 (Ct. App. 2004) (affirming fifty-fifty apportionment of the
 marital estate in a twenty-seven-year marriage), affd by 365 S.C. 285,
 617 S.E.2d 359 (2005); Doe v. Doe, 324 S.C. 492, 503, 478 S.E.2d 854,
 859 (Ct. App. 1996) (finding a fifty-fifty apportionment appropriate where the
 marriage lasted over thirty years); Harlan v. Harlan, 300 S.C. 537, 545,
 389 S.E.2d 165, 170 (Ct. App. 1990) (upholding a fifty-fifty division of the
 marital assets for an eighteen-year marriage); Smith v. Smith, 294 S.C. 194, 199, 363 S.E.2d 404, 407 (Ct. App. 1987) (preserving a
 fifty-fifty split in a marriage of eighteen years); Leatherwood v.
 Leatherwood, 293 S.C. 148, 150, 359 S.E.2d 89, 90 (Ct. App. 1987)
 (approving a fifty-fifty apportionment of marital property after a twenty-two
 year marriage).
In Doe
 v. Doe, 370 S.C. 206, 215, 634 S.E.2d 51, 56 (Ct. App. 2006), the
 family court partitioned the marital estate in a seventy/thirty proportion in
 favor of the husband considering the wifes marital misconduct.  Id. at 214, 634 S.E.2d at 55.  We found this division to be inequitable and
 re-assigned the estate in a sixty/forty distribution.  Id. at 215, 634
 S.E.2d at 56.  This Court elucidated:

 In light
 of the marriages longevity, our prohibition against imposing a severe penalty
 for fault, and the family courts erroneous consideration of Dr. Woodsides
 testimony, we find the family court abused its discretion when it awarded
 Husband seventy percent of the marital estate.  We believe the more equitable
 division would be sixty percent to Husband and forty percent to Wife.

Id. at 216; 634 S.E.2d at 57.  Doe is
 distinguished from the present case because the wifes marital misconduct
 consisted of a twenty year adulterous relationship, resulting in a daughter.  Id. at 211, 634 S.E.2d at 54.  The wife led the husband to believe he fathered the
 child when the biological father was actually the wifes paramour, a longtime
 family friend.  Id.
Widman
 v. Widman, 348 S.C. 97, 557 S.E.2d
 693 (Ct. App. 2001), upheld an equal division of the marital estate under
 circumstances similar to the instant case.  In Widman, the court granted
 the wife a divorce on the ground of adultery, ending a sixteen year marriage.  Id. at 108, 557 S.E.2d at 699.  
 

 In its
 decree, the trial court found [the wife] to be in willful violation of the
 courts order for (1) failing to file proper financial declarations as previously
 ordered, (2) disclosing information to [the husbands] parents and adult
 daughter regarding [his] prior adulterous conduct, and (3) intentionally
 withholding the existence of a trust which was the subject of a motion to
 compel.  

Id.  The court applied the fifteen factors of South
 Carolina Code section 20-7-472 (Supp. 2006) and found an equitable division of
 property to be a fifty-fifty split between the parties.  Id. at 111, 557
 S.E.2d at 700-701.
In
 the case sub judice, the family court stated several facts
 relevant to its equitable division of the marital estate.  The court considered
 (1) Husbands adulterous affair and its contribution to the break up of the
 marriage, (2) Wifes efforts in maintaining the assets and good credit during
 the pendency of this action, (3) the liens and encumbrances on the property
 allotted to each party, and (4) Wifes future support needs.
The
 overall distribution was sixty percent of the estate to Wife and forty percent
 to Husband for a marriage which lasted twenty-two years.  We hold this distribution
 is not equitable.  There is no evidence the family court considered the
 duration of the marriage or Wifes disregard of court orders.  Given the
 fifteen factors in South Carolina Code section 20-7-472 (Supp. 2006), the
 prohibition of severe penalty for fault, Rampey, 286 S.C. 153, 156, 332
 S.E.2d 213, 214 (Ct. App. 1985); Simmons, 275 S.C. 41, 44-45, 267 S.E.2d
 427, 429 (1980), and the trend in case law for an equal apportionment of
 property, we reverse the family courts sixty-forty split and hold a
 fifty-fifty division is appropriate.
2.  Special Equity and
 Characterization of Property as Marital v. Nonmarital
Husband
 asserts the family court erred by not granting him a special equity in the
 workers compensation award.  We disagree.  Next, Husband contends the family
 courts denial of special equity in the marital home was in error.  We agree.
a.  Special Equity
A
 spouse may claim special equity in marital property, as set forth in South
 Carolina Code section 20-7-471 (Supp. 2006):

 During
 the marriage a spouse shall acquire, based upon the factors set out in §
 20-7-472, a vested special equity and ownership right in the marital property
 as defined in § 20-7-473, which equity and ownership right are subject to
 apportionment between the spouses by the family courts of this State at the
 time marital litigation is filed or commenced as provided in § 20-7-472.

In Webber
 v. Webber, 285 S.C. 425, 427-428, 330 S.E.2d 79, 81 (Ct. App. 1985), this
 Court articulated:

 Under
 the special equity doctrine, Where a wife has made a material contribution to
 the husbands acquisition of property during coverture, she acquires a special
 equity in the property.  Wilson v. Wilson, 270 S.C. 216, 241 S.E.2d
 566, 568 (1978) (quoting 27B C.J.S. Divorce § 293 (1950)).  Therefore,
 one spouse acquires a special equity in the property of the other if (1) the
 property was acquired during coverture, (2) the spouse contributed to the
 acquisition of the property, and (3) the spouses contribution was material.

To
 acquire a special equity in nonmarital property, the property must appreciate
 during marriage or the non-owner spouse must materially contribute to the
 improvement of the property.  Webber, 285 S.C. at 428; 330 S.E.2d at 81
 (citing Anderson v. Anderson, 282 S.C. 163, 318 S.E.2d 566, 567
 (1984)).  The materiality of the contribution is not expressed in South
 Carolina Code section 20-7-472(3) (Supp. 2006), which states the court should
 examine [t]he contribution of each spouse to the acquisition, preservation,
 depreciation, or appreciation in value of the marital property, including the
 contribution of the spouse as a homemaker; provided, that the court shall
 consider the quality of the contribution as well as its factual existence when
 valuing and dividing property upon apportionment.  However, the statute directs
 the court to look at the quality and factual existence of the
 contribution.  Id.  
b.  Characterization of
 Property as Marital v. Nonmarital
Section
 20-7-473 of the South Carolina Code (Supp. 2006) defines marital property and
 nonmarital property:
The term
 marital property as used in this article means all real and personal property
 which has been acquired by the parties during the marriage and which is owned
 as of the date of filing or commencement of marital litigation as provided in §
 20-7-742 regardless of how legal title is held, except the following, which
 constitute nonmarital property:

 
 
 (1)  
 
 property acquired by either 
 party by inheritance, devise, bequest, or gift from a party other 
 than the spouse;
 
 
 
 (2) 
 property acquired by either 
 party before the marriage and property acquiring after the happening 
 of the earliest of (a) entry of a pendent lite order in a divorce or separate maintenance
 action; (b) formal signing of a written property or marital settlement
 agreement; or (c) entry of a permanent order of separate maintenance and
 support or of a permanent order approving a property or marital settlement
 agreement between the parties;
 
 
 
 (3) 
 property acquired by either 
 party in exchange for property described in items (1) and (2) of 
 this section;
 
 
 
 (4)  
 
 property excluded by written 
 contract of the parties.  Written contract includes any antenuptial agreement
 of the parties which must be considered presumptively fair and equitable so
 long as it was voluntarily executed with both parties separately represented by
 counsel and pursuant to the full financial disclosure to each other that is
 mandated by the rules of the family court as to income, debts, and assets;
 
 
 
 (5)  
 
 any increase in value in nonmarital property, except to the extent that the increase resulted directly
 or indirectly from efforts of the other spouse during marriage.
 
 
 
  
 Interspousal
 gifts of property, including gifts of property from one spouse to the other
 made indirectly by way of a third party, are marital property which is subject
 to division.
 
 
 
  
 The
 court does not have jurisdiction or authority to apportion nonmarital property.
 
 

Nevertheless,
 circumstances in which nonmarital property may be transmuted into marital
 property exist:  Property, nonmarital at the time of its acquisition, may be
 transmuted (1) if it becomes so commingled with marital property as to be
 untraceable; (2) if it is titled jointly; or (3) if it is utilized by the
 parties in support of the marriage or in some other manner so as to evidence an
 intent by the parties to make it marital property.  Johnson v. Johnson,
 296 S.C. 289, 295, 372 S.E.2d 107, 110 (Ct. App. 1988) (citing Trimnal v.
 Trimnal, 287 S.C. 495, 339 S.E.2d 869 (1986); Wyatt v. Wyatt, 293
 S.C. 495, 361 S.E.2d 777 (Ct. App. 1987)); Wannamaker v. Wannamaker, 305
 S.C. 36, 39, 406 S.E.2d 180, 182 (Ct. App. 1991).  Transmutation is a matter
 of intent to be gleaned from the facts of each case.  Murray v. Murray,
 312 S.C. 154, 157, 439 S.E.2d 312, 315 (Ct. App. 1993); Deidun v. Deidun,
 362 S.C. 47, 57, 606 S.E.2d 489, 494-495 (Ct. App. 2004) (citing Jenkins v.
 Jenkins, 345 S.C. 88, 98, 545 S.E.2d 531, 537 (Ct. App. 2001)).
The
 obligation of proving a successful transmutation is on the spouse who is
 claiming the property as marital.  Greene v. Greene, 351 S.C.
 329, 338, 569 S.E.2d 393, 398 (Ct. App. 2002).  This evidentiary burden
 consists of objective evidence showing that, during the marriage, the parties
 themselves regarded the property as the common property of the marriage. Id.  The use of non-marital property in support of the marriage without intent to
 treat or characterize the property as marital is not sufficient to establish
 that the property was transmuted.  Id.
i.  Workers Compensation Award
Husband
 alleges the family court erred in denying him special equity in the workers
 compensation award and the benefits should be characterized as nonmarital
 property.  We disagree.
The
 designation of the workers compensation award as marital property is supported
 by Orszula v. Orszula, 292 S.C. 264, 356 S.E.2d 114 (1987), which held: 
 Wages clearly fall within [the statutory] definition.  We find no error in the
 distribution of a substitute for wages. Id. at 266, 356 S.E.2d at 114.
Special
 equity is appropriate when a spouse acquires property during the marriage, or
 when there is an increase in value of property attributable to the non-owner
 spouses material contribution.  S.C. Code Ann. § 20-7-471 (Supp. 2006); Calhoun
 v. Calhoun, 339 S.C. 96, 106, 529 S.E.2d 14, 20 (2000); Murray v.
 Murray, 312 S.C. 154, 159, 439 S.E.2d 312, 316 (Ct. App. 1993).  
 
Husband
 argues because the benefits were awarded for his disability and not as a
 substitution of wages, they should be characterized as nonmarital property.  We
 disagree.  Husband was granted the workers compensation award incident to his
 injury while employed with John Montgomery Development in 1995.  This occurred
 during his marriage and his benefits are marital property under both the
 statutory definition in South Carolina Code section 20-7-473 (Supp. 2006) and
 the characterization in Orszula.  
Husband
 contends he should be granted a special equity in the workers compensation
 award.  He relies on Cooksey v. Cooksey, 280 S.C. 347, 312 S.E.2d 581
 (Ct. App. 1984), stating:  Based on the reasoning in Cooksey, the
 Husband should have been given an extra portion of the marital assets, because
 had it not been for the Husbands workers compensation award, the parties
 would not have had the family business known as Dawkins Automotive.  We
 disagree.  Cooksey depicts a situation in which special equity was
 awarded for an inheritance which was transmuted into marital property.  Id. at 352, 312 S.E.2d at 585.  Inheritances are nonmarital under the definition of South
 Carolina Code section 20-7-471(1) (Supp. 2006), whereas workers compensation
 awards are marital.  Orszula, at 266, 365 S.E.2d at 114.  Special equity
 is not appropriate for Husbands investment of marital property into the family
 business of Dawkins Automotive.
We
 find the Husband is not entitled to a special equity in the workers
 compensation award.  
ii.  Marital Home (532 McCluney Drive)
Husband
 professes the family court erred in failing to find he was entitled to a
 special equity in the marital home.  We agree.
Gifts
 from parties other than ones spouse during coverture are nonmarital in nature
 and not subject to equitable division upon divorce.  S.C. Code Ann. § 20-7-743
 (Supp. 2006); Canady v. Canady, 296 S.C. 521, 524, 374 S.E.2d 502, 504
 (Ct. App. 1988) (holding an inter vivos gift may be transmuted
 like inherited property) (citing Canady v. Canady, 289 S.C. 512, 347
 S.E.2d 115 (Ct. App. 1986)).  However, nonmarital property may be transmuted
 into marital property by commingling with marital property, titling it jointly,
 or using it to support the marriage with the intent to characterize the
 property as marital.  Canady, at 524, 374 S.E.2d at 504 (citing Wyatt
 v. Wyatt, 293 S.C. 495, 361 S.E.2d 777 (Ct. App. 1987)).  The court must
 examine the intent of the parties when nonmarital property is used in support
 of the marriage.  Canady, at 524, 374 S.E.2d at 504 (citing Johnson
 v. Johnson, 296 S.C. 289, 295, 372 S.E.2d 107, 110 (Ct. App. 1988)).
In
 the case at bar, family court concluded 532 McCluney Drive was marital property. 
 The issue was litigated and the court found the property was used in support of
 marriage and the parties actions convey intent to treat it as marital:

 The
 Defendants mother, Cora Dawkins, purchased this land for investment/rental property
 in 1987.  In 1988, the parties moved in to this home and paid rent/mortgage,
 until December 1994, when Cora Dawkins deeded the property to Defendant for
 $10.00 love and affection.  The Defendant did extensive remodeling to the home
 over the years.  The parties agree that the home is now worth $71,000.00 and
 that there is an outstanding mortgage of $49,566.00 (Plaintiffs Exhibit Number
 8 and Defendants Exhibit Number 36).  All payments were made from marital
 funds prior to the separation and the Plaintiff has made the mortgage, tax and
 insurance payments through the parties [sic] business account since the
 separation.  The Court finds that this is marital property, that the Defendant
 is not entitled to a special equity in this property and that there is
 $21,434.00 equity subject to equitable distribution.

While not objecting
 to the homes characterization, Husband contends that the family court should
 award him a special equity representative of the gift from his mother.  Cooksey
 v. Cooksey, 280 S.C. 347, 312 S.E.2d 581 (Ct. App. 1984), supports the
 Husbands argument for a special equity.  In Cooksey, a transmutation of
 inherited non-marital property into marital property did not extinguish the
 inheritors right for special equitable consideration upon divorce.  This court
 explicated:

 Clearly,
 Mr. Cookseys inheritance was commingled with and used as marital property.  We
 find, therefore, that the family court properly included it in the marital
 estate and subjected it to equitable distribution.  It does not follow,
 however, that Mr. Cooksey was entitled to recoup none of his inheritance.
 The
 failure of the family court to consider restoring Mr. Cookseys inheritance to
 him along with its failure to set forth facts upon which it based its finding that
 he should not be reimbursed for it was error.  On remand, the court is to
 make appropriate factual findings and legal conclusions as to whether Mr.
 Cooksey is entitled to a special equitable consideration upon the distribution
 of the marital assets based on his contribution of his inheritance.

Id. at 353, 312 S.E.2d at 585.
The initial
 equity in the marital home was a gift to Husband by his mother with a value of
 $25,000.00.  Although the gift was transmuted, transmutation did not extinguish
 Husbands right to receive a special equity upon divorce.  We find Husband is
 entitled to a special equity upon the distribution of the marital assets based
 on his contribution of the gift.
The
 family court erred in denying Husband a special equity in the marital home.  We
 reverse and hold Husband is entitled to a $25,000.00 special equity in the
 marital home.
3.  Dawkins Automotive Award to
 Wife
Husband
 claims the family court erred in granting Wife control and ownership of Dawkins
 Automotive.  We disagree.
Section
 20-7-476 of the South Carolina Code (Supp. 2006) renders authority to the family
 court to divide and sell property during the partitioning of a marital estate:

 The
 court may direct a party to execute and deliver any deed, bill of sale, note,
 mortgage, or other document necessary to carry out its order of equitable
 apportionment.  If a party so directed fails to comply, the court may direct
 the clerk of court in the county in which the property involved is situate to
 execute and deliver the document, and this performance by the clerk is as
 effective as the performance of the party would have been.  The court in making
 an equitable apportionment may order the public or private sale of all or any
 portion of the marital property upon terms it determines.
 The
 court may utilize any other reasonable means to achieve equity between the
 parties, which means are subject to and may not be inconsistent with the other
 provisions of this article and may include making a monetary award to achieve
 an equitable apportionment.  Any monetary award made does not constitute a
 payment which is treated as ordinary income to the recipient under either the
 provisions of Chapter 7 of Title 12 or, to the extent lawful, under the United
 States Revenue Code.

Accordingly,
 [t]he family court has wide discretion in determining how marital property is
 to be distributed.  Greene v. Greene, 351 S.C. 329, 341, 569 S.E.2d
 393, 400 (Ct. App. 2002) (citing Murphy v. Murphy, 319 S.C. 324, 329,
 461 S.E.2d 39, 41-42 (1995)).  Broad jurisdiction is granted family court
 judges in matters of equitable distribution by Section 20-7-420, Code of Laws
 of South Carolina (1976), and trial judges may employ any reasonable means to
 effectuate an equitable division of the marital estate.  Bass v. Bass,
 285 S.C. 178, 182, 328 S.E.2d 649, 651 (Ct. App. 1985).

 If
 possible, all issues between the parties should be resolved at [divorce] so
 that disputes and irritants do not linger and present further incentives to
 litigation.  The family courts objective should be to dissolve the marriage,
 sever all entangling legal relations and place the parties in a position from
 which they can begin anew.  

Johnson v. Johnson, 285 S.C. 308, 311, 329 S.E.2d 443, 445 (Ct. App.
 1985).
The
 family court in the instant case was acting within its discretion in dividing
 assets between Husband and Wife.  Dawkins Automotive was distributed to Wife
 incident to the apportionment of the marital assets.  This is consistent with Johnsons
 objective of severing all legal ties between Husband and Wife.  The family court
 has the authority to decide which spouse receives which asset.  
4.  Attorneys Fees
Husband
 asserts the family court erred in awarding Wife $3,000.00 in attorneys fees
 and only awarding him $7,500.00 in attorneys fees.  We disagree.
Authority
 to award attorneys fees in a divorce action is found in South Carolina Code section 20-3-130(H) (Supp. 2006):

 The court, from
 time to time after considering the financial resources and marital fault of
 both parties, may order one party to pay a reasonable amount to
 the other for attorney fees, expert fees, investigation fees, costs, and suit
 money incurred in maintaining an action for divorce from the bonds of
 matrimony, as well as in actions for separate maintenance and support,
 including sums for services rendered and costs incurred before the commencement
 of the proceeding and after entry of judgment, pendente lite and permanently.

An
 award of attorneys fees lies within the sound discretion of the family court
 and will not be disturbed on appeal absent an abuse of discretion.  Patel v.
 Patel, 359 S.C. 515, 553, 599 S.E.2d 114, 123 (2004); Bowen v. Bowen,
 327 S.C. 561, 563, 490 S.E.2d 271, 272, (Ct. App. 1997).  The family court, in
 determining whether to award attorneys fees, should consider each partys
 ability to pay his or her own fees, the beneficial results obtained, the
 parties respective financial conditions, and the effect of the fee on the
 parties standards of living.  E.D.M. v. T.A.M., 307 S.C. 471, 476-477,
 415 S.E.2d 812, 816 (1992).  In determining the reasonable amount of attorneys
 fees to award, the family court should consider the nature, extent, and
 difficulty of the services rendered, the time necessarily devoted to the case,
 counsels professional standing, the contingency of compensation, the
 beneficial results obtained, and the customary legal fees for similar
 services.  Glasscock v. Glasscock, 304 S.C. 158, 161, 403 S.E.2d 313,
 315 (1991); see also Messer v. Messer, 359 S.C. 614, 633, 598
 S.E.2d 310, 320 (Ct. App. 2004) (refusing to find an abuse of discretion as to
 award of attorneys fees when the family court analyzed each of the factors,
 detailed its findings in its final order, and those findings were supported by
 affidavits).
In this
 case, the family court found both parties contributed to the prolongation and
 contentiousness of this matter.  The family court held Wifes untimely
 production of documents warranted a $7,500.00 award of attorneys fees to Husband. 
 The family court recognized Husbands fault in causing the breakup of the
 marriage to be the controlling factor in its decision to grant Wife $3,000.00
 in attorneys fees.
We
 find sufficient evidentiary support in the record to uphold the judges award
 of attorneys fees.  Accordingly, we hold the court did not abuse its
 discretion in this instance.  See Robinson v. Tyson, 319 S.C. 360,
 366, 461 S.E.2d 397, 400 (Ct. App. 1995) (no abuse of discretion in ordering
 payment of attorneys fees where record contains sufficient evidence to support
 the award); Glasscock, 304 S.C. at 161, 403 S.E.2d at 315.
CONCLUSION

 We
 affirm the ruling of the family court in regard to:
 
 
 1)
 The characterization of the 
 workers compensation award as marital, subject to equitable 
 distribution without special equity;
 
 
 
 2)
 The grant of ownership of 
 Dawkins Automotive to Wife incident to the division of the marital 
 estate; and
 
 
 
 3) 
 Attorneys fees.
 
 
 We
 reverse the holding of the family court in reference to:
 
 
 1)
 The apportionment of marital 
 property in a sixty/forty split, holding a fifty/fifty division is 
 appropriate; and
 
 
 
 2) 
  The denial of Husbands 
 special equity in the marital home, finding Husband is entitled to a 
 $25,000.00 special equity.
 
 

We
 remand to the family court for re-division of the marital estate in accordance
 with this opinion.
AFFIRMED IN PART, REVERSED
 IN PART AND REMANDED.
ANDERSON and THOMAS, J.J.,
 and CURETON, A.J., concur.

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.